ANDERSON, Circuit Judge.
Petitioner Martin Rosillo-Puga seeks review of a decision issued by the Board of Immigration Appeals (“BIA”), in which the BIA affirmed the Immigration Judge’s (“IJ”) denial of Rosillo-Puga’s motion to reconsider or reopen his deportation proceedings. The IJ, in reliance on regulations implementing the Immigration and Nationalization Act, had ruled that he lacked jurisdiction over the motion because Rosillo-Puga had previously been removed from the United States. After concluding that the regulations are valid, we deny Rosillo-Puga’s petition for review.
BACKGROUND
On July 18, 1995, Rosilla-Puga, a native and citizen of Mexico, was admitted into the United States in Indiana as a conditional resident. On July 24, 1997, he was convicted of battery in an Indiana state court. On August 14, 2003, the Department of Homeland Security (“DHS”) commenced removal proceedings against Rosillo-Puga by filing a Notice to Appear (“NA”) before the immigration court in Aurora, Colorado. DHS charged Rosillo-Puga as being removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), because he had been convicted of an aggravated felony (the 1997 battery conviction), as well as removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(I), because he had been convicted of a crime of domestic violence (the same battery conviction, which involved Rosillo-Puga’s wife).
Rosillo-Puga appeared pro se at a hearing before an IJ and admitted the factual allegations in the NA. Based upon those admissions, the IJ ordered Rosillo-Puga removed to Mexico. Rosillo-Puga did not apply for relief from removal and he waived his right to appeal the removal order. Later in 2003, he was removed to Mexico. Three months following Rosillo-Puga’s removal to Mexico, the Seventh Circuit held that a conviction for battery under Indiana law, pursuant to which Rosillo-Puga had been convicted, was not an aggravated felony or a crime of domestic violence for immigration law purposes. Flores v. Ashcroft, 350 F.3d 666 (7th Cir. 2003).
On May 7, 2007, some three-and-one-half years after his removal to Mexico, Rosillo-Puga filed a “Motion to Reconsider and Rescind Removal Order, or in the Alternative to Reopen Proceedings” with the immigration court in Colorado. In his motion, Rosillo-Puga argued that, pursuant to 8 C.F.R. § 1003.23(b)(1), the immigration court could reconsider or reopen his case “at any time” and that the IJ had discretion to do so sua sponte.[1] Rosillo-Puga specifically contended that the August 2003 decision to remove him was “based on an error of law” because the Seventh Circuit had subsequently clarified that his battery conviction was not an aggravated felony or a crime of violence which subjected Rosillo-Puga to removal. Respondent’s Mot. at 1, Admin. R. at 63. Rosillo-Puga *1150 further argued that the Flores decision constituted “exceptional circumstances to invoke the Court’s sua sponte jurisdiction.” Id. at 9.
8 C.F.R. § 1003.23(b)(1) contains another provision critical to our decision in this case:
A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.
8 C.F.R. § 1003.23(b)(1). Thus, pursuant to this regulatory provision’s post-departure bar, aliens like Rosillo-Puga who have been removed from the United States may not file a motion to reopen or reconsider their removal proceeding. In his motion to reopen or reconsider, Rosillo-Puga argued that, despite the fact that he had departed the United States, the regulation’s “at any time” language “permits an Immigration Judge to exercise sua sponte jurisdiction regardless of whether the motion is made pre- or post-departure.” Respondent’s Motion at 11, Admin. R. at 73. He also argued that his removal to Mexico did not bar his motion to reopen because the deportation bar of 8 C.F.R. § 1003.23(b)(1) “does not apply to those who have already been removed and are therefore no longer ‘the subject of removal proceedings.’ ” Id. at 11-12. Finally, Rosillo-Puga argued that, because of the “at any time” language in § 1003.23(b)(1), the time limits contained in the statute for motions to reconsider (within thirty days of the entry of the final order of removal) and motions to reopen (within ninety days of the entry of the final order of removal) did not bar his motion.
The IJ denied Rosillo-Puga’s motion. While noting that “[i]n most circumstances, an IJ has general discretion to reopen and reconsider proceedings,” the IJ concluded that the post-departure bar specifically “precludes the IJ to exercise his general discretion in reopening and reconsidering proceedings under such circumstances.” Mem. and Dec. at 2, Admin. R. at 54. Citing Shawnee Tribe v. United States, 423 F.3d 1204, 1213 (10th Cir.2005), the IJ held that “the general sua sponte authority given to an IJ to reopen and reconsider proceedings is limited by the more specific prohibition on making such motions on behalf of a person who has departed after an order of removal.” Id.[2] The IJ accordingly denied Rosillo-Puga’s motions to reconsider or reopen the proceedings.
Rosillo-Puga appealed the adverse decision to the BIA. He argued the IJ committed legal errors in denying his motion to reopen or reconsider because: there was no conflict between the provision that an IJ can reconsider or reopen a proceeding “at any time” and the post-departure bar; the post-departure bar did not apply to those, like him, who had already been removed and were no longer in removal proceedings; he was not legally removed; the regulation was contrary to the applicable statute; the regulation was unconstitutional; the Seventh Circuit’s Flores decision constituted “extraordinary circumstances sufficient to invoke sua sponte authority”; *1151 and Rosillo-Puga was not time-barred even though three and one-half years had elapsed since his removal. See Notice of Appeal, Admin. R. at 42. The BIA affirmed the IJ’s decision and dismissed Rosillo-Puga’s appeal. The BIA agreed with the IJ that 8 C.F.R. § 1003.23(b)(1) deprived the immigration court of jurisdiction over motions to reopen or reconsider made by aliens subsequent to their departure from the United States. The Board also agreed with the IJ’s conclusion that the more specific post-departure bar trumps the more general language giving the IJ authority to reopen or reconsider a proceeding sua sponte. This petition for review followed. Addressing the issues as the parties have presented them, we deny the petition for review.
DISCUSSION
I. Standard of Review
The BIA in this case issued a single-member brief order, pursuant to 8 C.F.R. § 1003.1(e)(5), affirming the IJ’s decision. “We have held ... that the (e)(5) brief order ... produces an independent BIA decision that constitutes the final order of [the agency].” Uanreroro v. Gonzales, 443 F.3d 1197, 1204 (10th Cir.2006). “Accordingly, in deference to the agency’s own procedures, we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in' its affirmance.” Id. ‘When reviewing a BIA decision, we search the record for ‘substantial evidence’ supporting the agency’s decision.” Sidabutar v. Gonzales, 503 F.3d 1116, 1122 (10th Cir.2007). “Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole.” Id. (quoting Uanreroro, 443 F.3d at 1204). We examine questions of law de novo. Turgerel v. Mukasey, 513 F.3d 1202, 1205 (10th Cir. 2008).
II. Background of Immigration Laws
We begin by detailing the history of the statute and regulations at issue in this case. The McCarran-Walter Act of 1952 established the structure of current immigration laws, Pub.L. No. 82-414, 66 Stat. 163 (March 27, 1952) (codified at 8 U.S.C. §§ 1101-1537 (1952)). As part of an amendment of the immigration laws in 1961, Congress provided that federal courts could not exercise jurisdiction over deportation and exclusion orders where the alien had departed the United States following issuance of the order. Thus, 8 U.S.C. § 1105a(c)(1962) provided:
An order of deportation or of exclusion shall not be reviewed by any court if the alien ... has departed from the United States after issuance of the order.
Three months after the enactment of the 1962 laws, the Attorney General issued implementing regulations, including 8 C.F.R. § 3.2, titled “Reopening or reconsideration before the [BIA].” That regulation paralleled § 1105a(c), and provided:
[A] motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.
8 C.F.R. § 3.2 (1962) (currently 8 C.F.R. 1003.2(d)). 8 C.F.R. § 1003.23(b)(1) contains identical language governing motions to reopen or reconsider filed before an IJ. From the early 1960s until 1996, 8 U.S.C. § 1105a(c) remained unchanged from that 1961 version, as did the language of the regulations regarding motions to reopen or reconsider before an IJ and the BIA. All barred post-departure motions to reopen or reconsider. In April 1996, the Attorney *1152 General amended 8 C.F.R. § 3.2 and added numerical and time limits for motions to reopen and to reconsider, as well as prescribed contents for such a motion. The post-departure bar remained.
In September 1996, Congress made major reforms to immigration law through its enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (“IIRIRA”), Pub.L. No. 104-208, 110 Stat. 3009. Among other things, the IIRIRA repealed the statutory bar to judicial review of deportation orders when the alien had departed the country and codified and enacted procedures governing the filing of motions to reopen. See William v. Gonzales, 499 F.3d 329, 330 (4th Cir.2007). Thus, the current statute governing motions to reopen and reconsider provides that “[t]he alien may file one motion to reconsider a decision that the alien is removable from the United States,” 8 U.S.C. § 1229a(c)(6)(A), and that such a motion must be filed “within 30 days of the date of entry of a final administrative order of removal.” 8 U.S.C. § 1229a(c)(6)(B). Furthermore, “[a]n alien may file one motion to reopen proceedings under this section,” 8 U.S.C. § 1229a(c)(7)(A), which motion must, in general, be filed “within 90 days of the date of entry of a final administrative order of removal.” 8 U.S.C. § 1229a(e)(7)(C)(I). The statute also details the required content of motions to reopen or reconsider, as well as exceptions from both the numerical limit of one motion to reopen and the time period for filing such a motion. See 8 U.S.C. § 1229a(c)(7)(A)-(C). The statute does not, however, contain any explicit post-departure bar to review, which, as indicated above, had previously existed in former 8 U.S.C. § 1105a(c).
On March 6, 1997, the Attorney General promulgated regulations implementing the IIRIRA. The regulations retained the post-departure bar for motions to reopen before an IJ and the BIA:
A motion to reopen or ... reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings, subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen ... or reconsider, shall constitute a withdrawal of such motion.
(currently 8 C.F.R. § 1003.2(d)). Virtually identical language bars post-departure review before the IJ. See 8 C.F.R. § 1003.23(b)(1). Thus, the regulations continue to contain a post-departure bar to motions to reopen or reconsider before both the IJ and the BIA. Indeed, the Attorney General specifically discussed the continuing validity of the post-departure bar in the notice and comment process for the regulations implementing the IIRIRA:
No provision of the new section 242 of the [INA] supports reversing the long established rule that a motion to reopen or reconsider cannot be made in immigration proceedings by or on behalf of a person after that person’s departure from the United States----The Department [of Justice] believes that the burdens associated with the adjudication of motions to reopen and reconsider on behalf of deported or departed aliens would greatly outweigh any advantages this system might render.
Inspection and Expedited Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed.Reg. 10,312, 10,321 (March 6,1997).
III. Validity of 8 C.F.R. § 1003.2(d) and •23(b)(1)
A.
The validity of the regulations continuing to impose a post-departure bar, *1153 and their applicability to Rosillo-Puga, are at the heart of this case. William, 499 F.3d 329, the only court to directly address the validity of these regulations, has determined that the regulations are invalid because they “conflict[] with the statute [8 U.S.C. § 1229a(c)(6)(A) and (7)(A) ] by restricting the availability of motions to reopen to those aliens who remain in the United States.” Id. at 334.[3]
“ ‘The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.’ ” Lee v. Mukasey, 527 F.3d 1103, 1106 (10th Cir.2008) (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). “We begin by analyzing the plain language employed by Congress, and we ‘must give words their ordinary or natural meaning.’ ” Id. (quoting Leocal v. Ashcroft, 543 U.S. 1, 8-9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004)). Finally, “[w]hen a court reviews an agency’s construction of the statute which it administers,” it must first answer “whether Congress has directly spoken to the precise question at issue.” Chevron, 467 U.S. at 842, 104 S.Ct. 2778. “If congressional intent is clear from the statutory language, the inquiry is over, and both the court and the agency ‘must give effect to the unambiguously expressed intent of Congress.’ ” Lee, 527 F.3d at 1106 (quoting Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778). “[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency’s answer is based on a permissible construction of the statute.” Ochieng v. Mukasey, 520 F.3d 1110, 1114 (10th Cir.2008) (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778).
In accordance with Chevron, we begin with the plain language of the statute, 8 U.S.C. § 1229a(e)(6) and (7): “The alien may file one motion to reconsider a decision that the alien is removable from the United States.” 8 U.S.C. § 1229a(e)(6)(A). “An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv).” Id. § 1229a(e)(7)(A).
*1154 As indicated, the William, court is the only court to specifically address the clarity or ambiguity of this statute and whether the regulations providing a post-departure bar conflict with the statute. The majority in William, concluded “that § 1229a(e)(7)(A) unambiguously provides an alien with the right to file one motion to reopen, regardless of whether he is within or without the country.” William\ 499 F.3d at 332. The court marshaled several arguments in support of its conclusion. First, the Fourth Circuit observed that “in providing that ‘an alien may file,’ the statute does not distinguish between those aliens abroad and those within the country — both fall within the class denominated by the words ‘an alien.’ ” Id. Thus, the court concluded that “Congress unambiguously addressed, and at least implicitly repealed, the regulatory post-departure bar by granting ‘an alien’ the right to file one motion to reopen.” Id.
Second, the Fourth Circuit found that the:
overall structure of § 1229a reenforces [its] reading of § 1229a(c)(7)(A) in two ways. First, the fact that Congress provided for specific limitations on the right to file a motion to reopen bolsters the conclusion that § 1229a(c)(7)(A) cannot be read to except from its terms those aliens who have departed the country. Second, and more importantly, in detailing the time limit for a motion to reopen, Congress provided that the usual 90-day limit does not apply where an alien who is applying for relief from removal as a victim of domestic violence “is physically present in the United States at the time of filing the motion.”
William, 499 F.3d at 333 (quoting 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV)) (internal citation and quotation omitted). Given that Congress did not include the physical presence requirement in § 1229a(c)(7)(A), the Fourth Circuit drew “a ‘negative inference’ from Congress’ exclusion of the physical presence requirement from the statutory section under consideration.” Id. (noting that where Congress “includes particular language in one section of a statute but omits it in another section of the same Act ... it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion”) (citing Hamdan v. Rumsfeld, 548 U.S. 557, 126 S.Ct. 2749, 2765, 165 L.Ed.2d 723 (2006)) (internal quotations omitted). Further, the court observed that “finding that physical presence in the United States is required before any motion to reopen may be filed would render the physical presence requirement expressly written into subsection (c)(7)(C)(iv)(IV) mere surplus-age.” Id. “In sum, Congress knew how to include a requirement of physical presence when it wished to do so, as it did in § 1229a(c)(7)(C)(iv)(IV). That it did not do so in the general provisions of § 1229a(c)(7)(A) leads us to conclude that Congress did not make presence in the United States a prerequisite to filing a motion to reopen.” Id.
Having found that § 1229a(c)(7)(A) “clearly and unambiguously grants an alien the right to file one motion to reopen, regardless of whether he is present in the United States when the motion is filed,” the Fourth Circuit declared that 8 C.F.R. § 1003.2(d), containing the post-departure bar on motions to reopen, “conflicts with the statute ... [and] lacks authority and is invalid.” Id. at 334. The same reasoning would support the same conclusion with respect to 8 C.F.R. § 1003.23(b)(1).
Calling it “a close question,” the lengthy dissent to the majority’s decision in William explained its conclusion that “8 C.F.R. § 1003.2(d) remains a valid exercise of the Attorney General’s eongressionallydelegated rulemaking authority under the [Immigration and Nationality Act].” Id. at *1155 335. The dissent also developed many arguments supporting its view that Congress did not intend to, in effect, repeal the Attorney General’s regulations.
First, applying the first part of the Chevron analysis, the dissent concluded that “ § 1229a(c)(7)(A) in isolation says nothing about the departure bar in 8 C.F.R. § 1003.2(d) or about whether the statute as a whole should be construed as repealing the departure bar.” William, 499 F.3d at 336 (Williams, C.J., dissenting). It rejected the majority’s arguments about the domestic-violence exception, noting that the “physical presence” requirement in the domestic-violence exception was enacted after the IIRIRA, and thus shed no light on Congressional intent at the time the IIRIRA was enacted, and noting, further, that the physical-presence requirement is not coextensive with the regulatory departure bar.[4] The dissent also noted that “a nearly identical provision limiting aliens to one motion to reopen existed before enactment of the IIRIRA, and in the same regulation containing the departure bar now located in § 1003.2(d),” which undermined the “majority’s conclusion that § 1229a(c)(7)(A) by itself repeals the departure ban in 8 C.F.R. § 1003.2(d).” Id. at 334-35.
Next, after rejecting the majority’s conclusion that the statute unambiguously amounts to a repeal of a post-departure bar, and thereby invalidates the regulations, the dissent went on to explain its view that the statute contains no such unambiguous directive:
Congress has said nothing explicitly about the propriety of a departure bar like the one in § 1003.2(d). William argues that because Congress codified every provision of the regulatory framework but the departure bar, that omission must have been intentional, but the obvious response to this argument is that Congress is presumed to have known about and approved of the departure bar when it amended the INA without explicitly repealing it. Congress often expressly repeals both statutory provisions[] and regulations, and it is reasonable to expect that Congress will speak with greater clarity in overruling long-held agency interpretations like the departure bar at issue here. Either way, the focus in this case inevitably shifts to what Congress did not do or say, which is a good sign that the Chevron inquiry must progress past step one.
Id. at 341 (internal citations omitted).
Having concluded that the statute is silent and that the agency is empowered by statute to fill in gaps in the regulatory scheme,[5] the dissent proceeded to the second step of the Chevron analysis and determined whether the agency’s interpretation as expressed in the regulations is “reasonable in light of the legislature’s revealed design.” NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995). Under this deferential standard, we must give the agency’s interpretation “controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.” Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 239, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004). *1156 After noting that the statute addressed petitions for judicial review, whereas the regulations addressed motions to reopen before the IJ and BIA, the dissent observed the differences between the two venues are critical to explaining why Congress repealed the statutory post-departure bar but did not explicitly repeal the regulatory post-departure bars to motions before the agency: “A petition for review of a final order of removal represents an alien’s first and only opportunity for judicial review of the merits of the order, whereas a motion to reopen seeks a subsequent opportunity for administrative review.” William, 499 F.3d at 343 (Williams, C.J., dissenting). As the dissent further explained:
The differences between a petition for judicial review and a motion to the BIA to reopen proceedings ... largely explain why Congress repealed the departure bar to judicial review and acquiesced in the continued application of the Attorney General’s departure bar to BIA review. Given that the IIRIRA streamlined the rules and procedures of the INA to make it easier for the BIA to deport aliens, Congress surely must have understood that the result would be that many more aliens would be removed during the pendency of their judicial proceedings. Repealing § 1105a(c) ensured that the expedited removal of aliens would not cut off their one-and-only chance at judicial review of the merits of their removal order. But I cannot impute to Congress a similar intention to free the motion to reopen from the workings of the departure bar, given the motion’s disfavored status.
Id. Thus, “Congress’s repeal of the departure bar to judicial review of final removal orders has little or no bearing on the validity of the regulation’s departure bar to BIA review of motions to reopen.” Id. See Pena-Muriel v. Gonzales, 489 F.3d 438, 442 (1st Cir.2007) (determining that Congress’s repeal of § 1105a(c) “does not remotely support an argument that Congress also intended, implicitly, to allow post-departure petitions to reopen a closed administrative proceeding”). This is particularly so, given the considerable discretion and authority vested in the Attorney General to control and determine the way its agency reviews immigration decisions. See Uanreroro, 443 F.3d at 1203.
The dissent finally reached the ultimate question' — whether the regulations are contrary to the statute. It concluded:
Given the INA’s silence with respect to the departure bar, I understand Congress’s failure to explicitly repeal 8 C.F.R. § 1003.2(d) as acquiescence to its continued operation. The regulation containing the departure bar, a provision aimed at promoting finality in removal proceedings, has been the longstanding view of the Attorney General, ‘a view that we [must] presume Congress understood when it amended the Act in [1996].’ This presumption is especially strong here, for the Attorney General’s regulation was ‘fresh’ when Congress enacted the IIRIRA, having been promulgated only a few months before Congress passed the IIRIRA.
William, 499 F.3d at 344. Accordingly, the dissent held that the Attorney General’s regulations were a valid exercise of its regulatory authority and did not contravene the statute.
We agree with the dissent’s position and conclude that 8 C.F.R. § 1003.23(b)(1) (like 8 C.F.R. § 1003.2(d)) is a valid exercise of the Attorney General’s Congressionallydelegated rulemaking authority, and does not contravene 8 U.S.C. § 1229a(c)(6)(A) or (7)(A). Specifically, we agree that, at the first step of the required Chevron analysis, the statute is simply silent on the issue of whether it meant to repeal the post-departure bars contained in the At *1157 torney General’s regulations. We certainly cannot derive a clear meaning from the language about “an alien” or “the alien” having the opportunity to file “one” motion for reopening or reconsideration. The William dissent provides a thorough analysis of this point, and we agree with its discussion. See also, Penar-Muriel, 489 F.3d at 442 (“Congress remained silent regarding the long-standing regulatory bar imposed by 8 C.F.R. § 1003.23(b)(1).”).
Having concluded that the statute is not clear and unambiguous, we turn to the second Chevron inquiry — “whether the agency’s answer is based on a permissible construction of the statute.” Ochieng, 520 F.3d at 1114 (quoting Chevron, 467 U.S. at 843, 104 S.Ct. 2778). As stated above, “where Congress has not merely failed to address a precise question but has also made an explicit delegation of rulemaking authority to the agency, ‘the agency’s regulation is given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.’ ” William, 499 F.3d at 335 (quoting Household Credit Servs., Inc., 541 U.S. at 239, 124 S.Ct. 1741). For the reasons explained in the William dissent, we uphold the regulations as valid under the statute. The regulations address the agency’s treatment of motions to reopen, not judicial review over final orders. We further find it inconceivable that Congress would repeal the post-departure bar, without doing or even saying anything about the forty-year history of the Attorney General incorporating such a bar in his regulations. In short, we are not persuaded that Rosillo-Puga’s argument that, by negative inference, Congress intentionally swept away forty years of continuous practice by the Attorney General. It is “well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency’s interpretation is persuasive evidence that the interpretation is the one intended by Congress.” Commodity Futures Trading Comm’n v. Schor, 478 U.S. 833, 846, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (internal quotations omitted). See Matter of Armendarez-Mendez, 24 I & N Dec. 646 (BIA 2008) (specifically rejecting the analysis of the William majority).
The dissent to this opinion relies upon quotations from Dada (a case not cited to us by either party) to support its view that the regulations at issue are invalid. In our view, Dada speaks more to status than procedure, and an alien in voluntary departure proceedings has a different status than an alien who has been removed:
In many ways the structure of the present immigration system is predicated on the assumption that the physical removal of an alien from the United States is a transformative event that fundamentally alters the alien’s posture under the law. Indeed, the ultimate purpose of a removal proceeding is, with respect to removable aliens, precisely to bring about such a physical departure. As a rule, once an alien has been removed, his underlying removal order is deemed executed, the proceedings that led to that order are consummated, and whatever immigration status the removed alien may have possessed before departure is vitiated....
The consequence of departure for a removed alien is thus not just physical absence from the country, but also a nullification of legal status, which leaves him in no better position after departure than any other alien who is outside the territory of the United States. In fact, an alien who physically departs the United States after being ordered removed is in a substantially less advantageous position than other aliens, because the existence of a removal order renders him or her inadmissible and vulnerable *1158 to heightened criminal sanctions and expedited removal procedures in the event of unlawful reentry.
Matter of Armendarez-Mendez, 24 I & N Dec. 646, 655-56 (2008). Thus, we do not view Dada as implicitly supporting the view that the regulations are invalid.
B.
There is an alternative basis for denying Rosillo-Puga’s petition for review. As the facts set forth above indicate, Rosillo-Puga filed his motion to reconsider and/or reopen some three-and-one-half years after his removal to Mexico. Section 1229a(e)(6)(B) provides that a motion to reconsider “must be filed within 30 days of the date of entry of a final administrative order of removal,” and section 1229a(c) (7) (C) (i) provides that a motion to reopen “shall be filed within 90 days of the date of entry of a final administrative order of removal.” Thus, Rosillo-Puga’s motions were untimely. While Rosillo-Puga’s counsel suggested at oral argument that such time limits are subject to various tolling provisions, no one has made a serious argument that Rosillo-Puga’s motions would be viewed as timely filed. Accordingly, we conclude, as the Fifth Circuit did recently, that Rosillo-Puga’s petition was untimely. See Ovalles v. Holder, 577 F.3d 288 (5th Cir.2009). That basis similarly distinguishes this case from the majority’s position in William.
Furthermore, there is an additional ground upon which to rule against Rosillo-Puga: waiver. While he has suggested that the time limits applicable to a petition to reopen or reconsider are mere rules of procedure, rather than jurisdictional impediments, there is no doubt that he has waived any argument that he should be excused from those procedural requirements. Accordingly, Rosillo-Puga’s petition fails for this alternative reason.
IY. Application of Regulations
Assuming the validity of the regulations, which we have found, Rosillo-Puga argues alternatively that 8 C.F.R. § 1003.23(b)(1) does not apply to those aliens who have already been removed. He relies upon the Ninth Circuit’s decision in Lin v. Gonzales, 473 F.3d 979 (9th Cir.2007), in support of this argument. The regulation states that a motion to reopen or reconsider “shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings.” 8 C.F.R. § 1003.23(b)(1). The Ninth Circuit held that the “regulation is phrased in the present tense and so by its terms applies only to a person who departs the United States while he or she ‘is the subject of removal ... proceedings.’ ” Lin, 473 F.3d at 982. Accordingly, “[b]e-cause petitioner’s original removal proceedings were completed when he was removed ..., he did not remain the subject of removal proceedings after that time.” Id.
The government urges us not to follow Lin, arguing that it misinterpreted the plain language of the regulations:
A plain reading of both regulations[6 jshows they aim to bring finality to the immigration process by preventing an alien from filing a motion to reopen after having departed the United States. The [Ninth Circuit] erred because while the regulations speak in terms of an alien who “is the subject of’ removal proceedings, the regulations do not link the term “is” to the time of departure. Rather, “is” refers to an alien who at some point is in proceedings, regardless *1159 of whether he or she departs during or after those proceedings.
Respondent’s Br. at 21. The government finds reinforcement for that interpretation in the next sentence of the regulations, which states “[a]ny departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.” 8 C.F.R. § 1003.2(d); 8 C.F.R. § 1003.23(b)(1). The government argues “[tjhat sentence also speaks in terms of an alien who ‘is the subject’ of removal proceedings, but necessarily deals with departures after the completion of proceedings.” Respondent’s Br. at 22.
We agree with the government that Lin’s interpretation of the regulation is problematic. Quite simply, it seems illogical to discuss motions to reopen filed by aliens in proceedings, as typically, a motion to reopen will be filed only by one whose proceedings are completed, and, thus, need to be “reopened.” By contrast, the regulation as a whole makes sense if it addresses motions to reopen filed by those aliens who have departed following the completion of their deportation/removal proceedings, and wish to reopen them. We therefore reject Rosillo-Puga’s interpretation of the regulation. See Matter of Armendarez-Mendez, 24 I & N Dec. 646 (BIA 2008) (specifically rejecting the Lin court’s interpretation of the regulation); see also Ovalles, 577 F.3d at 297-99 (rejecting identical argument).
Rosillo-Puga also argues, alternatively, that the regulation is arbitrary and capricious as applied to him because it fails to account for the fact that his order of removal was premised on a characterization of his conviction that was subsequently overturned; that the IJ and BIA should have considered his motion sua sponte; and that the agency’s application of the regulation violated his due process rights. We note that the Fifth Circuit has recently rejected the identical arguments, and we agree with that court’s analysis. See Ovalles, 577 F.3d at 296-300.
Rosillo-Puga argues that the “IJ’s removal order is invalid because it is based on an erroneous interpretation of the definition of a crime of violence.” Pet’r’s Br. at 27. While Rosillo-Puga cites some cases arguably supporting his position, as the government points out, there is ample authority to the contrary. For example, in Navarro-Miranda v. Ashcroft, 330 F.3d 672 (5th Cir.2003), a case very similar factually to this case, the petitioner had previously been deported based on a drunk driving conviction, and he argued, post-departure, that the BIA should have sua sponte reopened his proceedings because an intervening circuit court decision held that a drunk driving conviction was not a deportable offense. The BIA declined to invoke its sua sponte authority, noting that the more specific post-departure bar trumped the more general sua sponte authority provision. In denying the petition for review, the Fifth Circuit observed that “[t]he Board’s conclusion ... is consistent with the well-established principle that ‘a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule.’ ” Id. at 676 (quoting Teague v. Lane, 489 U.S. 288, 308, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)); see also Patel v. Atty. Gen., 334 F.3d 1259, 1262 (11th Cir.2003) (dismissing petition where petitioner’s prior conviction was subsequently found by state court to not constitute a deportable defense, saying “we perceive no theory under which the subsequent action of a state court could confer jurisdiction upon us that would not otherwise exist”). Thus, we cannot say that the BIA’s decision was arbitrary and *1160 capricious. See Ovalles, 577 F.3d at 296-98.
Next, the IJ and BIA found that “when there is an apparent conflict between a specific provision and a more general one, the more specific one governs.” Memorandum & Dec. at 2, Admin. R. at 54; see also Order at 1, Admin. R. at 2. As we stated in Shawnee Tribe, “[i]t is a fundamental canon of statutory construction that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs.” 423 F.3d at 1213 (further quotation omitted). That general rule has been specifically applied to the regulations at issue here. See Navarro-Miranda, 330 F.3d at 676 (“[T]he BIA’s reasoning that the prohibition on motions to reopen stated in § 3.2(d) [post-departure bar] overrides its § 3.2(a) power to reopen on its own motion is a reasonable interpretation of these two regulations.”); see also Mansour v. Gonzales, 470 F.3d 1194, 1198 (6th Cir.2006). Furthermore, we have held that “we do not have jurisdiction to consider petitioner’s claim that the [Board] should have sua sponte reopened the proceedings under 8 C.F.R. § 1003.2(a) because there are no standards by which to judge the agency’s exercise of discretion.” Infanzon v. Ashcroft, 386 F.3d 1359, 1361 (10th Cir.2004). Thus, we perceive no error in the BIA’s decision that, notwithstanding its sua sponte authority to consider motions to reopen, it declined to reopen Rosillo-Puga’s proceedings in this case.[7] See Ovalles, 577 F.3d at 295-98.
Finally, Rosillo-Puga argues that the BIA’s application of the regulatory bar to his case violated his due process rights. We disagree. “It is well-established that aliens are entitled to due process in deportation proceedings.” Penar-Muriel, 489 F.3d at 443. “In this context, due process requires that the alien receive notice of the charges against him, and a fair opportunity to be heard before an executive or administrative tribunal.” Id. Rosillo-Puga received due process in his deportation proceedings. At the time of his removal, he had been convicted of a crime that warranted his removal. He received all appropriate process before the immigration authorities, he did not seek relief from the removal order, and he waived his right to appeal the removal order. He made no attempt to alter the status of his conviction before he left the country. Now, Rosillo-Puga attempts to reopen proceedings that ended roughly five years ago, and five years following his departure. “Due process does not require continuous opportunities to attack executed removal orders years beyond an alien’s departure from the country. Indeed, there is a strong public interest in bringing finality to the deportation process.” Id.
CONCLUSION
We accordingly DENY the petition for review of the BIA’s decision.

. 8 C.F.R. § 1003.23(b)(1) provides in pertinent part:
An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the alien, reopen or reconsider any case in which he or she has made a decision....

. We stated in Shawnee Tnbe that "[i]t is a 'fundamental canon of statutory construction that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs.’ ” 423 F.3d at 1213 (quoting United States v. Groves, 369 F.3d 1178, 1188 n. 5 (10th Cir.2004)).

. We note that the Supreme Court recently tangentially discussed the departure bar in Dada v. Mukasey, — U.S. -, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008). In Dada, the Supreme Court addressed a dilemma faced by certain aliens:
the alien who is granted voluntary departure but whose circumstances have changed in a manner cognizable by a motion to reopen is between Scylla and Charybdis: He or she can leave the United States in accordance with the voluntary departure order; but, pursuant to [8 C.F.R. § 1003.2(d)], the motion to reopen will be deemed withdrawn. Alternatively, if the alien wishes to pursue reopening and remains in the United States to do so, he or she risks expiration of the statutory period and ineligibility for adjustment of status, the underlying relief sought.
Id. at 2318 (citations omitted). The Court held that an alien should be allowed to withdraw his or her motion for voluntary departure, in order to pursue a motion to reopen. The very problem identified by the Supreme Court in Dada would not exist but for the validity of the regulation challenged here — the alien's motion to reopen would not be withdrawn but for the regulation. See Matter of Armendarez-Mendez, 24 I & N Dec. 646, 655 n. 7 (BIA 2008) ("We perceive some tension ... between William and the Supreme Court’s recent precedent in Dada v. Mukasey, ... which treated the departure bar as a valid constraint on the Board's authority to adjudicate motions filed by the beneficiaries of voluntary departure orders. Such treatment was essential to the Dada Court's portrayal of the problem to be remedied.") (citation omitted). We are aware, however, that neither party in Dada specifically challenged the validity of the regulations at issue.

. 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV), the domestic violence exception to the limit of one motion to reopen, only requires the alien to be physically present when the motion to reopen is filed. The departure bar in the regulations provides that any departure effects a withdrawal of a previously filed motion, thereby requiring continuous presence in the United States.

. Congress has expressly delegated rule-making authority to the Attorney General to promulgate rules implementing the immigration laws. See 8 U.S.C. § 1103(g)(2).

. The government refers to both 8 C.F.R. § 1003.23(b)(1) and § 1003.2(d), which contain identical language.

. We note that the BIA has recognized that it may reopen or reconsider a case sua sponte in “exceptional circumstances.” See, e.g., In re J-J, 21 I & N. Dec. 976 (BIA 1997).