**PUBLISH**

**January 30, 2012**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JESUS CONTRERAS-BOCANEGRA,

     Petitioner,

v.

ERIC H. HOLDER, JR., United States Attorney General,

     Respondent,

------------------------------

AMERICAN IMMIGRATION COUNCIL; AMERICAN IMMIGRATION LAWYERS ASSOCIATION; NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD; POST-DEPORTATION HUMAN RIGHTS PROJECT; ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK,

     Amici Curiae.

No. 10-9500

---

**Opinion On Rehearing En Banc**

---

Edward L. Carter, (J. Christopher Keen, with him on the briefs) Keen Law Offices, Orem, Utah, for Petitioner.

Greg D. Mack, Senior Litigation Counsel, (Alison R. Drucker, Senior Litigation Counsel, with him on the brief) United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Respondent.

Trina A. Realmuto, National Immigration Project, Boston, Massachusetts, (Beth Werlin and Mary Kenney, American Immigration Council, Washington, D.C., with her on the briefs) for amici curiae.

---

Before **BRISCOE**, **MCKAY**, **KELLY**, **LUCERO**, **MURPHY**, **HARTZ**, **O'BRIEN**, **TYMKOVICH**, **GORSUCH**, **HOLMES**, and **MATHESON**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

We granted en banc rehearing of this case to determine whether the so-called post-departure bar regulation at 8 C.F.R. § 1003.2(d) remains valid in this circuit considering Congress' 1996 amendment to the Immigration and Nationality Act ("INA"). The amended Act grants noncitizens the right to file one motion to reopen their immigration proceedings. However, the Board of Immigration Appeals ("Board") contends that it lacks jurisdiction to consider motions to reopen filed by individuals who have already departed the United States, despite the fact that such a limitation appears nowhere in the statutory text.

In Rosillo-Puga v. Holder, 580 F.3d 1147, 1156 (10th Cir. 2009), a divided panel of this court upheld the post-departure bar as an authorized exercise of the Attorney General's rulemaking authority. The panel in the case presently before us considered itself bound by that precedent. After Rosillo-Puga was decided, the tide turned, and six

- 2 -

circuits have consecutively invalidated the regulation. Rather than stand alone in upholding the post-departure bar, we choose to overturn <u>Rosillo-Puga</u> and its progeny. We hold that the subject regulation impermissibly interferes with Congress' clear intent to afford each noncitizen a statutory right to pursue a motion to reopen under 8 U.S.C. § 1229a(c)(7).

**I**

Jesus Contreras-Bocanegra, a native and citizen of Mexico, became a lawful permanent resident of the United States in 1989. Two years later, Contreras received a suspended jail sentence for attempted possession of a controlled substance. In 2004, the Department of Homeland Security detained Contreras[1] upon his return from a visit to Mexico and placed him in removal proceedings on the ground that his conviction rendered him inadmissible. An Immigration Judge ("IJ") ordered him removed from the United States, and the Board affirmed the order. This court subsequently denied Contreras' petition for review. <u>See</u> <u>Contreras-Bocanegra v. Holder</u>, 376 F. App'x 817, 823 (10th Cir. 2010).

A few days after the Board dismissed his appeal, the government removed Contreras to Mexico. Contreras obtained new representation and, from Mexico, filed a timely motion to reopen his removal proceedings based on ineffective assistance of

---

[1] We follow the petitioner's lead in referring to himself by his first surname only.

counsel.[2]  The Board denied Contreras' motion on jurisdictional grounds, concluding

pursuant to the post-departure bar that it lacked authority to review a motion to reopen

filed by a noncitizen outside of the United States.

Contreras petitioned for review of the Board's decision, arguing that 8 C.F.R.

§ 1003.2(d) improperly curtails his right under 8 U.S.C. § 1229a(c)(7) to file a motion to

reopen.  As noted, the Contreras panel denied his petition, concluding that it was bound

by circuit precedent to uphold the post-departure bar.  Contreras-Bocanegra v. Holder,

629 F.3d 1170, 1172 (10th Cir. 2010) (relying on Rosillo-Puga, 580 F.3d at 1156).  We

then granted rehearing en banc to reconsider our decision in Rosillo-Puga.

## II

### A

For more than half a century, the motion to reopen was a creature of

administrative prudence rather than a statutory right.  Shortly after establishing the Board

in the early 1940s, the Attorney General authorized it to reopen concluded immigration

proceedings at its discretion.  8 C.F.R. § 90.9 (1941) (authorization to hear motions); 8

C.F.R. § 150.8 (1941) (discretion to reopen).  In 1952, the Attorney General limited that

discretion by prohibiting the Board from reviewing a motion to reopen "made by or in

---

[2] Contreras alleges his removal proceedings were marred by a series of errors by counsel.  Although Contreras was eligible, his attorney did not apply for a waiver of removal.  Contreras' attorney also neglected to serve proposed exhibits on opposing counsel; as a result, the IJ excluded this evidence.  Most disturbingly, when Contreras appealed the IJ's removal order to the Board, his attorney failed to file an appellate brief.

behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States." 8 C.F.R § 6.2 (1952). The Attorney General later imposed evidentiary requirements on motions to reopen, see 8 C.F.R § 3.8(a) (1962), and restricted the number of and time for filing such motions, see 8 C.F.R. § 3.2(c)(2) (1997). Although the Attorney General has amended the motion to reopen regulation several times, the content of the post-departure bar remains substantially the same today. See 8 C.F.R. § 1003.2(d).

When Congress amended the INA to provide federal courts of appeals with jurisdiction to review final orders of deportation in 1961, it created a statutory counterpart to the post-departure bar that precluded judicial review of removal orders of noncitizens who were not physically present in the country. Act of Sept. 26, 1961, Pub. L. No. 87-301, § 5(a), 75 Stat. 650, 653 (1961) (codified at 8 U.S.C. § 1105a(c) (1964)) ("An order of deportation or of exclusion shall not be reviewed by any court if the alien . . . has departed from the United States after issuance of the order."). For the next three decades, departure from the United States thus ended all immigration proceedings, both administrative and judicial.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") enacted two key changes to this scheme. First, Congress adopted several amendments to "expedite the removal of aliens." Kucana v. Holder, 120 S. Ct. 827, 838 (2010). IIRIRA mandated that the government deport noncitizens no later than 90 days after the entry of a removal order. 8 U.S.C. § 1231(a)(1); see also 8 U.S.C. §

1229c(a)(2)(A), (b)(2) (limiting voluntary departure period to 60 or 120 days).  At the same time, Congress lifted the ban on post-departure judicial review, allowing noncitizens who had departed or been removed from the United States to seek review of their removal orders from abroad.  See 8 U.S.C. § 1105a(c) (1996) (repealed).

Second, IIRIRA codified the right to file one statutory motion to reopen.  See 8 U.S.C. § 1229a(c)(7) ("An alien may file one motion to reopen proceedings under this section. . . .").  In the words of the Supreme Court, this change "transformed the motion to reopen from a regulatory procedure to a statutory form of relief."  Dada v. Mukasey, 554 U.S. 1, 14 (2008).  Congress also codified most of the pre-IIRIRA regulatory limitations on motions to reopen.  See § 1229a(c)(7)(A) (codifying the numeric limitations previously found at 8 C.F.R. § 3.2(c)(2) (1997)); § 1229a(c)(7)(B) (codifying substantive and evidentiary requirements previously found at 8 C.F.R § 3.2(c)(1) (1997)); § 1229a(c)(7)(C)(i) (codifying the filing deadline formerly at 8 C.F.R. § 3.2(c)(2) (1997)).  Notably, however, Congress did not codify the regulatory post-departure bar.

Nevertheless, when the Attorney General issued regulations implementing IIRIRA, it repromulgated the post-departure bar, placing a geographic limitation on the newly created statutory right to file a motion to reopen.  See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,321 (Mar. 6, 1997) (codified at 8 C.F.R. § 1003.2(d)).  That regulation, currently in effect, commands:

A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

8 C.F.R. §1003.2(d). Necessarily, we must determine the validity of this regulation's incursion into the statutory right to file a motion to reopen.

**B**

We first confronted this issue in Rosillo-Puga v. Holder, 580 F.3d 1147 (10th Cir. 2009). Rosillo-Puga filed a motion to reopen or reconsider his immigration case three years after his removal. The IJ denied his motion, relying on the post-departure bar, and the Board affirmed. Rosillo-Puga petitioned this court for review of the Board's decision, arguing that the post-departure bar was an invalid restriction on his statutory right to file a motion to reopen. We disagreed and held that the post-departure bar did "not contravene" § 1229a(c)(7). 580 F.3d at 1156.[3] We concluded that the statute was "not clear and unambiguous" as to whether a motion to reopen could be filed by a

---

[3] Although we noted that Rosillo-Puga's long-delayed motion clearly fell outside the deadline prescribed by 8 U.S.C. § 1229a(c)(7), we did not rest solely on that basis. See 580 F.3d at 1158; see also id. at 1161 (O'Brien, J., concurring) (expressing a preference to rest on untimeliness grounds but joining the majority opinion to ensure resolution). Although Contreras' timely motion adheres to the requirements of § 1229a(c)(7), the panel in the instant case found itself bound by Rosillo-Puga's broader holding. Contreras-Bocanegra, 629 F.3d at 1172 ("Any factual distinction between our Rosillo-Puga line of cases and this case is not relevant to those prior cases' precedential value.").

departed noncitizen, and that the regulation's limitation was reasonable. 580 F.3d at 1156-57 (analyzing the issue under two-step test dictated by Chevron U.S.A v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)); see also Mendiola v. Holder, 585 F.3d 1303, 1311 (10th Cir. 2009) (reaffirming Rosillo-Puga).

When this court issued Rosillo-Puga, only one other circuit had addressed the validity of the post-departure bar regulation. See William v. Gonzales, 499 F.3d 329 (4th Cir. 2007) (invalidating the post-departure bar regulation).[4] In Rosillo-Puga, the panel majority agreed with the views of the dissenting judge in William and created a circuit split.

Since that time, five additional circuits have entered into the fray, each aligning with the majority outcome in William. The Third and Ninth Circuits held, as the William court did, that the post-departure bar regulation is an impermissible interpretation of § 1229a(c)(7) under Chevron. See Prestol Espinal v. Att'y Gen., 653 F.3d 213, 217-24 (3d Cir. 2011); Martinez Coyt v. Holder, 593 F.3d 902, 905-07 (9th Cir. 2010).[5] The Sixth Circuit also determined that the post-departure bar regulation "cannot clear the first step of Chevron." Pruidze v. Holder, 632 F.3d 234, 240 (6th Cir. 2011) ("Congress left

---

[4] The Fifth Circuit had addressed a related but distinct question: whether the post-departure bar impermissibly conflicted with a regulation that allows the Board to consider motions to reopen outside of the confines of § 1229a(c)(7). See Ovalles v. Holder, 577 F.3d 288 (5th Cir. 2009). That court answered in the negative, and expressly left open the question of whether the post-departure bar contravenes the statute. Id. at 299-300.

[5] The Ninth Circuit limited its holding to cases where the petitioner had been involuntarily removed. See Martinez Coyt, 593 F.3d at 907 n.3.

- 8 -

no gap to fill when it empowered the agency to consider all motions to reopen filed by an alien.").

In reaching this conclusion, the Sixth Circuit relied on the Supreme Court's recent instruction in Union Pacific Railroad v. Brotherhood of Locomotive Engineers, 130 S. Ct. 584, 596-98 (2009), that an administrative agency may not contract the jurisdiction granted to it by Congress. Pruidze, 632 F.3d at 240. Two other circuits, the Second and the Seventh, have invalidated the post-departure bar regulation based solely on Union Pacific. See Luna v. Holder, 637 F.3d 85, 100 (2d Cir. 2011); Marin-Rodriguez v. Holder, 612 F.3d 591, 594 (7th Cir. 2010).

Because we now join the Third, Fourth, and Ninth Circuits in invalidating the post-departure bar under Chevron, we need not decide whether that regulation also violates the rule of Union Pacific. It is worth noting, however, that these inquiries may not be altogether separate. See Prestol Espinal, 653 F.3d at 218 n.4 ("Although the Supreme Court did not discuss Chevron in Union Pacific, it is not clear to us that the Chevron question and the jurisdictional question are entirely distinct."). Both analyses require us to ask whether Congress intended the Board to entertain motions to reopen filed by all noncitizens, including those who have departed from the United States.

**III**

To test whether an agency's regulation conflicts with its governing statute, we employ the two-step analysis mandated by Chevron. At the first step, we utilize "traditional tools of statutory construction" to ascertain whether "Congress had an

intention on the precise question at issue." Chevron, 467 U.S. at 843 n.9. If Congress'

intent is clear, "that is the end of the matter." Id. at 842. Only if "the statute is silent or

ambiguous with respect to the specific issue," do we proceed to the next step of asking

whether an agency's interpretation is "based on a permissible construction of the statute."

Id. at 843.

## A

Section 1229a(c)(7)(A) provides that "[a]n alien may file one motion to reopen

proceedings." As the Supreme Court has observed, "the statutory text is plain insofar as

it guarantees to each alien the right to file one motion to reopen." Dada, 554 U.S. at 15

(quotation omitted) (emphasis added). The language does not distinguish between

noncitizens abroad and those in the United States. Rather, it refers unequivocally to the

term "alien," defined elsewhere by the INA as "any person not a citizen or national of the

United States." 8 U.S.C. § 1101(a)(3). Departed noncitizens are accordingly "a subset of

the group (i.e. 'aliens') which [the statute] vests with the right to file these motions."

William, 499 F.3d at 332. On its face, therefore, the statute "leaves no room for the post-

departure bar." Prestol Espinal, 653 F.3d at 218.

The structure of § 1229a(c)(7) reinforces this plain-text reading. Although the

statute limits a noncitizen's right to file for reopening in a number of specific ways,

geography is not among those limitations. In fact, Congress codified every pre-IIRIRA

regulatory limitation on filing a motion to reopen except the post-departure bar. See §

1229a(c)(7)(A) (numeric limitations); § 1229a(c)(7)(B) (substantive and evidentiary

- 10 -

requirements); § 1229a(c)(7)(C)(i) (filing deadline).  "As a general principle of statutory interpretation, if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded."  United States v. Goldbaum, 879 F.2d 811, 813 (10th Cir. 1989); see also United States v. Johnson, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others.  The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.").  This principle is particularly pertinent in the IIRIRA context, given that Congress was undoubtedly aware of the pre-existing regulatory post-departure bar.  By deliberately omitting that geographic exception to the rule that a noncitizen "may file one motion" to reopen, while codifying other exceptions, Congress signaled its intent that a noncitizen's physical location would not affect the statutory right.

Congress' intent is further illuminated when we consider the overall amendment scheme.  See Crandon v. United States, 494 U.S. 152, 158 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.").  As discussed above, the 1996 amendments "'inverted' certain provisions of the INA, encouraging prompt voluntary departure and speedy government action, while eliminating statutory barriers to pursuing relief from abroad."  Martinez-Coyt, 593 F.3d at 906 (quoting Nken v. Holder, 129 S. Ct. 1749, 1755 (2009)).  In particular, Congress scuttled the pre-IIRIRA norm that departure ended all legal proceedings by repealing the departure bar to judicial review.

- 11 -

See Marin-Rodriguez, 612 F.3d at 594. Congress also adopted a 90-day period for the government to effectuate removal, 8 U.S.C. § 1231(a)(1)(A), and gave noncitizens 90 days to file a motion to reopen their proceedings after a removal order. § 1229a(c)(7)(C). If we were to uphold the regulation, the Department of Homeland Security would be permitted—indeed, required—to unilaterally cut short the congressionally mandated filing period in almost every case. See Martinez-Coyt, 593 F.3d at 907 ("The only manner in which we can harmonize the[se] provisions . . . is to hold . . . that the physical removal of a petitioner by the United States does not preclude the petitioner from pursuing a motion to reopen."); see also Luna, 637 F.3d at 101 (concluding that the 90-day removal period is not in tension with the 90-day deadline for motions to reopen so long as noncitizens may pursue reopening from abroad).

Thus, the overall thrust of IIRIRA bolsters the conclusion already compelled by text and statutory structure: Congress intended to provide each noncitizen the right to file one motion to reopen, regardless of whether he remains in or has departed from the United States. Because the post-departure bar regulation conflicts with Congress' clear intent, it cannot survive step one of the Chevron analysis.

**B**

The government nevertheless contends that the regulation should clear Chevron's first hurdle absent "express language repealing or displacing the Attorney General's rule." We disagree. Chevron does not require Congress to explicitly delineate everything an agency cannot do before we may conclude that Congress has directly

- 12 -

spoken to the issue. Such a rule would "create an 'ambiguity' in almost all statutes, necessitating deference to nearly all agency determinations." Prestol Espinal, 653 F.3d at 220. To the contrary, Chevron empowers agencies to "fill statutory gaps, not to create them, and in this instance Congress left no gap to fill." Pruidze, 632 F.3d at 240. Rather, Congress provided every "alien" the right to file one motion to reopen.

In Rosillo-Puga, we nonetheless determined that the post-departure regulation survived the first step of Chevron analysis because we expected Congress to "speak with greater clarity" when "overruling [a] long-held agency interpretation[] like the departure bar." 580 F.3d at 1157 (quoting William, 499 F.3d at 341 (Williams, C.J., dissenting)). The government presses the same argument in this appeal. Specifically, it points to Commodity Futures Trading Commission v. Schor for the proposition that "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." 478 U.S. 833, 846 (1986) (quotation omitted).

To understand why Schor's clear-statement rule does not apply to this case, we return to the history of the post-departure regulation. When the Attorney General promulgated the bar in 1941, "Congress had not spoken about motions to reopen and thus it had said nothing that could give rise to an agency interpretation." Pruidze, 632 F.3d at 240. Accordingly, when Congress enacted § 1229a(c)(7) as part of IIRIRA, it did not "revisit" or revise an existing statutory provision. Rather, it created—for the first time—

a statutory right to file a motion to reopen subject to certain limitations. To require an express repeal of a discretionary regulation in this context would upend the fundamental principle that regulations should interpret statutes and not the other way around. When Congress legislates on a clean slate, it need not explicitly abrogate every related policy put in place by an agency. Instead, when faced with such a legislative overhaul, agencies should recalibrate their regulations to ensure they maintain a statutory basis. This the Attorney General has failed to do.

The government further asserts that the motion to reopen statute as written—that is, without the geographic limitation imposed by the post-departure bar—conflicts with another provision of the INA, 8 U.S.C § 1182(a)(9)(A)(ii). Section 1182 prohibits removed noncitizens from seeking admission into the United States within five, ten, or twenty years of the date of their departure or removal. Id. If §§ 1229a(c) and 1182(a)(9)(A) needed reconciling, the resultant ambiguity might require us to proceed to the second step of Chevron. But there is no tension between these provisions. When the Board grants a motion to reopen, this action vacates the underlying removal order and restores the noncitizen to her prior status. See Nken, 129 S. Ct. at 1759 n.1. As a result, the noncitizen is no longer subject to the reentry bar under § 1182(a)(9)(A). Further, our decision does not compel the Board or any other entity to grant motions to reopen filed by previously removed individuals; it merely requires that the Board consider them if they comply with the other requirements of § 1229a(c)(7).

The government additionally advances the view that the post-departure bar

regulation does not contravene the right codified in § 1229a(c)(7) because another provision of the Act allows departed noncitizens to reapply for admission into the United States. § 1182(a)(9)(A)(iii). Once readmitted, presumably, the noncitizen could file a motion to reopen removal proceedings. We do not see how this supposed "mechanism for relief" can save the post-departure bar from invalidation. As an initial matter, we are skeptical that a removed noncitizen could reapply for admission, be readmitted, and file a motion to reopen all before the 90-day deadline. More significantly, whether to allow a removed noncitizen to reapply for admission is entirely within the option of the Department of Homeland Security, and we will not condition an absolute statutory right on the vagaries of administrative discretion. Section 1182(a)(9)(A)(iii), therefore, cannot adequately safeguard a noncitizen's entitlement to file a motion to reopen.

Finally, the government argues that the post-departure bar should be upheld as a categorical exercise of discretion, even though the Board has consistently characterized the regulation as jurisdictional, as it did in this case. See, e.g., Matter of Armendariz-Mendez, 24 I. & N. Dec. 646, 660 (B.I.A. 2008). While agencies have the power under certain circumstances to promulgate categorical rules that supplant individualized adjudication, see Lopez v. Davis, 531 U.S. 230, 241-42 (2001), we cannot uphold the Board's action on grounds not provided by the agency itself. See SEC v. Chenery Corp., 318 U.S. 80, 87 (1943); see also Pruidze, 632 F.3d at 240. More importantly, "an agency's authority to promulgate categorical rules is limited by clear congressional intent to the contrary. In other words, Lopez applies only when Congress has not spoken to the

precise issue and the statute contains a gap." <u>Wedelstedt v. Wiley</u>, 477 F.3d 1160, 1168 (10th Cir. 2007). Casting the post-departure bar as categorical exercise of discretion, therefore, does not cure the fact that it contravenes clear congressional intent.

In sum, none of the government's arguments persuade us that we need to look beyond the first step of <u>Chevron</u> to resolve this case. Section 1229a(c)(7) plainly guarantees each noncitizen the right to file a motion to reopen, regardless of whether they have departed the United States. Because the post-departure bar regulation contravenes this right, it is not a valid exercise of the Attorney General's rulemaking authority. To the extent that <u>Rosillo-Puga</u> and <u>Mendiola</u> hold otherwise, those decisions are overruled.

**IV**

We **GRANT** Contreras' petition for review, **VACATE** the panel decision and the Board's order, and **REMAND** for further proceedings consistent with this opinion.