# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAFAEL MARTINEZ COYT,
                          *Petitioner,*

                v.

ERIC H. HOLDER JR., Attorney
General,
                          *Respondent.*

No. 05-77080

Agency No.
A078-372-732

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 5, 2009—San Francisco, California

Filed January 20, 2010

Before: Ferdinand F. Fernandez and Sidney R. Thomas,
Circuit Judges, and Ann Aldrich,* District Judge.

Opinion by Judge Thomas

---

*The Honorable Ann Aldrich, Senior United States District Judge for
the Northern District of Ohio, sitting by designation.

## COUNSEL

Robert Bradford Jobe, San Francisco, California, on behalf of petitioner Rafael Martinez Coyt.

Eric Warren Marsteller, Washington, DC, on behalf of respondent Eric H. Holder Jr.

## OPINION

THOMAS, Circuit Judge:

In this petition for review, we consider whether the Board of Immigration Appeals ("BIA") may deem a motion to reopen or reissue withdrawn by operation of law when the government removes a petitioner before the BIA has ruled on

the motion. We conclude that it cannot do so, and we grant the petition for review.

I

Rafael Martinez Coyt entered the United States at San Ysidro, California without inspection in 1984. In 2001, he was served with a Notice to Appear charging him with removability as an alien present who had not been admitted or paroled. Martinez Coyt conceded removability, but applied for cancellation of removal, or, in the alternative, voluntary departure. In 2003, the immigration judge ("IJ") found that Martinez Coyt had no disqualifying criminal convictions, had been continuously physically present for ten years, and was of good moral character during that time. She denied cancellation, however, finding that Martinez Coyt was healthy and had extensive family ties in Mexico, had not shown more than mere loss of current employment, or the inability to maintain his present standard of living, and had not shown any compelling educational or medical needs of his children that could not be met in Mexico. The IJ held that, while the petitioner's American citizen children were likely to suffer some hardship, his claim did not amount to exceptional and extremely unusual hardship. She granted a sixty-day voluntary departure period.

Martinez Coyt timely appealed the decision. A single-member panel of the BIA affirmed the IJ's decision without opinion on May 7, 2004, granting Martinez Coyt thirty days to depart voluntarily. The order was sent to Martinez Coyt's former attorney at an address in Oakland, California; however, his former attorney had moved his office to Emeryville, California. Martinez Coyt's former attorney asserts that he did not receive word of the decision until he made a routine phone call to the Executive Office for Immigration Review on October 6, 2004, several months after the expiration of the renewed voluntary departure period. Both Martinez Coyt and

his former attorney agree that Martinez Coyt did not find out about the denial until sometime in early October, 2004.

Martinez Coyt was scheduled for deportation on September 20, 2005. That day, through a new attorney, he moved for the BIA to "reissue" its decision so that the thirty-day voluntary departure period would restart, arguing that his former counsel had been ineffective. Along with the motion, he introduced evidence that his son Marcos had hernia surgery in April and may require additional surgery; that his son Rafael Jr. had serious mental health problems dating back to at least February of that year, including emotional outbursts and a suicide attempt; and that he had been injured on the job in March of that year, which he alleged would interfere with his ability to provide for his children's medical needs if he were removed and lost his American health insurance. Martinez Coyt also moved for an emergency motion to stay removal pending a decision on his motion to reissue. He was removed the same day, before the BIA had ruled on his emergency stay motion.

The government filed its opposition to Martinez Coyt's motion to reissue, equating it with a motion to reopen, and explaining that it should be denied as untimely.[1] In response, Martinez Coyt supplemented his motion, explaining that he had been removed on September 20, 2005, and that his son had attempted suicide on two separate occasions since that time, had been institutionalized briefly, and at some point had been diagnosed with bi-polar disorder. He presented a letter from the son's social worker tracing the suicide attempts to their separation, as well as documentation of a lack of psycho-

---

[1] *See Singh v. Gonzales*, 494 F.3d 1170, 1172 (9th Cir. 2007) (petitioner "filed a motion to reopen with the BIA, requesting that it reissue its decision so [he] could timely appeal to this court"); *see also Chen v. U.S. Atty. Gen.*, 502 F.3d 73, 75 (2d Cir. 2007) ("A motion to reissue is treated as a motion to reopen." (citing *Tobeth-Tangang v. Gonzales*, 440 F.3d 537, 539 n. 2 (1st Cir. 2006)).

logical services and appropriate medical care in Mexico that would prevent their reunification outside of the United States.

A one-member panel of the BIA issued a per curiam order on November 28, 2005, citing 8 C.F.R. § 1003.2(d) to find that Martinez Coyt's departure resulted in the withdrawal of his motion. Martinez Coyt timely petitioned us to review the BIA decision.

## II

At issue in this petition for review is one aspect of the BIA's regulatory "departure bar," under which the BIA deems a pending appeal or motion to reopen or reconsider withdrawn if the petitioner departs from the United States, either voluntarily or involuntarily. The departure bar at issue in this case, 8 C.F.R. § 1003.2(d), reads in relevant part:

> Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider [before the BIA], shall constitute a withdrawal of such motion.

Martinez Coyt claims that the regulation as applied to him is invalid, as being *ultra vires* to the governing statute.

## A

**[1]** We must first dispose of the government's unpersuasive argument that we lack appellate jurisdiction over Martinez Coyt's challenge to the validity of 8 C.F.R. § 1003.2(d) because he did not exhaust this claim before the BIA. As Martinez Coyt points out, he had no right to challenge the validity of the regulation before the BIA, because "[t]he BIA simply has no authority to invalidate a regulation that it is bound to follow." *Espinoza-Gutierrez v. Smith*, 94 F.3d 1270, 1273

(9th Cir. 1996). Because the BIA has no authority to declare a regulation invalid, "the exhaustion doctrine does not bar review of a question concerning the validity of an INS regulation because of a conflict with a statute." *Id.* at 1273-74. Thus, Martinez Coyt did not need to present his regulatory challenge to the BIA before raising it in a petition for review.

B

In determining whether the Attorney General exceeded statutory authority in promulgating an immigration regulation, we employ the familiar analysis dictated by *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984) and *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000). *United States v. Dang*, 488 F.3d 1135, 1140 (9th Cir. 2007).

*Chevron* requires that we examine in the first instance "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. "If Congress has done so, the inquiry is at an end; [we] 'must give effect to the unambiguously expressed intent of Congress.' " *Brown & Williamson*, 529 U.S. at 132 (quoting *Chevron*, 467 U.S. at 843). In determining Congressional intent under *Chevron*, we not only look at the precise statutory section in question, but we also analyze the provision in the context of the governing statute as a whole, presuming congressional intent to create a " 'symmetrical and coherent regulatory scheme.' " *Id.* at 133 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)). Finally, "we must be guided to a degree by common sense as to the manner in which Congress is likely to delegate [such an important] policy decision." *Id.*

If, after conducting such an analysis, we conclude that Congress has not addressed the issue, we "must respect the agency's construction of the statute so long as it is permissible." *Id.* at 132 (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999), and *Auer v. Robbins*, 519 U.S. 452, 457 (1997)).

However, "we must reject those constructions that are contrary to clear congressional intent or that frustrate the policy that Congress sought to implement." *Schneider v. Chertoff*, 450 F.3d 944, 952 (9th Cir. 2006).

**[2]** In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, § 304(a), 110 Stat. 3009-546, 3009-593 (Sept. 30, 1996), Congress amended the Immigration and Nationality Act ("INA") by, among other things, granting aliens subject to a removal order the right to file one motion to reopen. 8 U.S.C. § 1229a(c)(7)(A); *Dada v. Mukasey*, 128 S.Ct. 2307, 2310 (2008). IIRIRA provides that a motion to reopen must be filed within ninety days of the entry of a final order of removal. 8 U.S.C. § 1229a(c)(7)(C). IIRIRA also requires that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A).

The government argues that it is permissible to interpret IIRIRA to mean that, where the Attorney General complies with Congress's directive to remove an alien within ninety days, by that very act he unilaterally cuts short the ninety day period Congress granted the alien to file a motion to reopen. Moreover, he unilaterally causes to be withdrawn any motion that the alien already filed. This is so, the government argues in this case, even where the alien filed a motion to stay removal along with the motion to reopen, and even if the BIA has not yet ruled on the stay motion. According to the government, the BIA is simply stripped of jurisdiction.

**[3]** These arguments are contrary to the IIRIRA statutory scheme. In considering the context of the governing statute as a whole, presuming congressional intent to create a "symmetrical and coherent regulatory scheme," the intent of Congress is clear. As we have previously held, Congress wished to expedite the physical removal of those aliens not entitled to admission to the United States, while at the same time

increasing the accuracy of such determinations. *See Morales-Izquierdo v. Gonzales,* 486 F.3d 484, 494 (9th Cir. 2007) (en banc) (citing H.R. Rep. No. 104-469(I), at 111 (1996)).

**[4]** To that end, IIRIRA "inverted" certain provisions of the INA, encouraging prompt voluntary departure and speedy government action, while eliminating prior statutory barriers to pursuing relief from abroad. *Nken v. Holder*, 129 S. Ct. 1749, 1755 (2009). Previously, an alien was afforded an automatic stay of an order of final removal pending final action by the courts. 8 U.S.C. § 1105a(a)(3) (repealed 1996). The stay was required because, under prior law, removal of a petitioner from the United States precluded courts from exercising jurisdiction over petitions for review. 8 U.S.C. § 1105a(c) (repealed 1996). IIRIRA changed that by lifting the prior statutory bar over courts exercising jurisdiction over departed aliens, removing the automatic stay provision upon petition for review, and informing the Attorney General that removal need not be deferred. IIRIRA § 306(b), 110 Stat. 3009-612 (repealing § 1105a); 8 U.S.C. § 1252(b)(3)(B); 8 U.S.C. § 1252(b)(8)(C). Thus, in passing IIRIRA, Congress anticipated that petitioners would be able to pursue relief after departing from the United States.

Congress's dual goals are apparent not only in IIRIRA's provisions concerning judicial review, but in its provisions concerning administrative relief. IIRIRA, for the first time, provides petitioners with a statutory right to file a motion to reopen administrative proceedings, while specifying that the right must be exercised within ninety days after the final order of removal. 8 U.S.C. § 1229a(c)(7)(A); *Dada*, 128 S. Ct. at 2315-16; *see also* 8 U.S.C. § 1229a(c)(6) (creating a statutory right to file a motion to reconsider, within thirty days of the entry of a final administrative order); 8 U.S.C. § 1229c(b)(2) ("Permission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days."); *Dada*, 128 S.Ct. at 2318 (construing IIRIRA voluntary departure with regard to the motion to reopen's "purpose . . . to ensure a

proper and lawful disposition"). IIRIRA also requires the Attorney General to effectuate physical removal of petitioners subject to a final order of removal within ninety days of the order. 8 U.S.C. § 1231(a)(1)(A).

**[5]** It would completely eviscerate the statutory right to reopen provided by Congress if the agency deems a motion to reopen constructively withdrawn whenever the government physically removes the petitioner while his motion is pending before the BIA. The only manner in which we can harmonize the provisions simultaneously affording the petitioner a ninety day right to file a motion to reopen and requiring the alien's removal within ninety days is to hold, consistent with the other provisions of IIRIRA, that the physical removal of a petitioner by the United States does not preclude the petitioner from pursuing a motion to reopen.

Our conclusion that 8 C.F.R. § 1003.2(d) cannot apply to cause the withdrawal of an administrative petition filed by a petitioner who has been involuntarily removed from the United States is consistent with the approach taken by the only other circuit to address the question of involuntary removal specifically. In *Madrigal v. Holder,* 572 F.3d 239 (6th Cir. 2009), the Sixth Circuit held 8 C.F.R. § 1003.4 to be "inapplicable" where the petitioner is forcibly removed during the pendency of his appeal. *Id.* at 244.[2] The Sixth Circuit reasoned that a party's withdrawal of a pending proceeding must be a voluntary relinquishment of a right, and that an involuntary removal could not be held to constitute a voluntary withdrawal. *Id.* As the concurring opinion succinctly put it:

> The government forcibly removed [the petitioner]

---

[2]In relevant part, 8 C.F.R. § 1003.4 states that "[d]eparture from the United States of a person who is the subject of . . . removal proceedings, . . . subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken."

from the United States, and now claims she abandoned her appeal because she left the country. To state that argument should be to refute it . . . .

*Id.* at 245-46 (Kethledge, J., *concurring*).**[3]**

## III

In this case, there is an additional question as to the timeliness of Martinez Coyt's motion. Whether the motion to reopen is timely, however, depends on the resolution of the substantive argument in the motion itself, and Martinez Coyt filed a motion to stay removal so that the BIA could address that issue. Rather than allowing either motion to be heard, however, the government removed Martinez Coyt knowing that, under the BIA's understanding of the Attorney General's regulations, it was stripping the BIA of jurisdiction over his case. *See In re Armendarez-Mendez*, 24 I & N Dec. 646, 648 (BIA 2008). It is not for us to address the question of timing in the first instance, but rather for the agency tasked with the administration of IIRIRA. *See Gonzales v. Thomas*, 547 U.S. 183, 187 (2006). Thus, we remand this issue to the BIA for its consideration.

## IV

**[6]** The BIA erred in refusing to entertain Martinez Coyt's

---

**[3]**Other circuits have considered whether 8 C.F.R. § 1003.2(d) and 8 C.F.R. § 1003.23(b)(1), a nearly identical provision relating to motions to reopen or reconsider filed before an immigration judge, can be applied to *any* removal—voluntary or involuntary—a question we need not, and do not, reach in this case. Those circuits are split. The Fourth Circuit has invalidated 8 C.F.R. § 1003.2(d) in its entirety. *William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007). The Tenth Circuit upheld both regulations. *Rosillo-Puga v. Mukasey*, 580 F.3d 1147 (10th Cir. 2009); *see also Mendiola v. Holder*, 585 F.3d 1303 (10th Cir. 2009). The Fifth Circuit upheld 8 C.F.R. § 1003.2(d) on narrower grounds. *Ovalles v. Holder*, 577 F.3d 288, 295-96 (5th Cir. 2009) (distinguishing facts from *William*).

motion because it relied on a regulation that was invalid as applied to a forcibly removed petitioner. Therefore, we grant the petition and remand for further proceedings consistent with this opinion. Given our decision, we need not—and do not—decide any other question raised by the parties.

**PETITION GRANTED; REMANDED.**