PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  10-1473
_____


RAMON JULIO PRESTOL ESPINAL,
Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____


On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A 024-502-326)
Immigration Judge: Hon. Walter A. Durling
_____


Argued April 27, 2011

Before: SLOVITER, GREENAWAY, JR., Circuit Judges
and POLLAK,[*] District Judge

(Filed: August 3, 2011 )
_____


Jacqueline Brown Scott (Argued)
San Francisco, CA  94121

_____

[*] Hon. Louis H. Pollak, Senior Judge, United States
District Court for the Eastern District of Pennsylvania,
sitting by designation.

Attorney for Petitioner

Eric H. Holder
Yanal H. Yousef   (Argued)
Thomas W. Hussey
Ann C. Varnon
United States Department of Justice
 Office of Immigration Litigation, Civil Division
Washington, DC  20044

Attorneys for Respondent

Beth J. Werlin   (Argued)
American Immigration Council
Washington, DC  20005

Trina A. Realmuto
National Immigration Project of the National Lawyers Guild
Boston, MA  02108

Attorneys for Amicus-Petitioner

_____

## OPINION OF THE COURT
_____

SLOVITER, *Circuit Judge*.

Ramon Prestol Espinal (referred to by the parties as Prestol) petitions for review of the decision of the Board of Immigration Appeals ("BIA") that it lacked jurisdiction over Prestol's motion to reconsider the BIA's denial of relief because Prestol had been removed from the United States. Prestol's petition requires us to decide whether the Attorney General's regulation barring aliens who have been removed from the United States from filing a motion to reconsider and/or reopen, 8 C.F.R. § 1003.2(d), otherwise known as the post-departure bar, is inconsistent with the Illegal

2

Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 8 U.S.C. § 1229a(c)(6)(A), (7)(A), which specifically grants an alien the right to file one motion to reconsider and one motion to reopen without any geographic limitation on that right.

# I.[1]

Prestol was born in the Dominican Republic but lived in the United States from 1982 until 2009. In January 2009, the Department of Homeland Security ("DHS") charged Prestol with being removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as an alien present in the United States without being admitted or paroled. In February 2009, DHS also charged him pursuant to sections 212(a)(2)(A)(i) and (a)(2)(B) of the INA with being removable as an alien convicted of an offense relating to a controlled substance and an alien convicted of two or more offenses involving crimes of moral turpitude. These charges of removability were based on Prestol's 2004 convictions for possession of a controlled substance and violating a protective order.

In April 2009, Prestol admitted the factual allegations underlying his notice to appear and was found removable as charged. However, Prestol applied for asylum, withholding of removal and Convention Against Torture ("CAT") protection alleging that because of his previous assistance to the Drug Enforcement Agency he would be targeted for violence by drug dealers if he returned to the Dominican Republic. On June 23, 2009, the Immigration Judge ("IJ") denied Prestol's applications for relief. On November 3, 2009, the BIA affirmed the IJ and twenty-one days later, November 24, 2009, Prestol was removed from the United

---

[1] Neither the merits of Prestol's motion for reconsideration nor his underlying request for relief are before us. A brief procedural outline will therefore suffice.

States to the Dominican Republic.  On December 3, 2009, Prestol filed a timely motion to reconsider with the BIA.  On January 19, 2010, the BIA denied the motion to reconsider based on what it deemed a lack of jurisdiction resulting from Prestol's removal from the United States.  Prestol petitions for review of this decision.

## II.[2]

We review the BIA's legal conclusions de novo.  *Patel v. Att'y Gen.*, 599 F.3d 295, 297 (3d Cir. 2010).  Where an agency's regulation allegedly conflicts with the governing statute, we employ the analysis prescribed by *Chevron U.S.A., Inc., v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  The focus of *Chevron* is aimed at determining and giving effect to Congress' "unambiguously expressed intent."  *Id.* at 843.  Under *Chevron* step one, "we must first determine if the statute is silent or ambiguous with respect to the specific issue of law in the case, using traditional tools of statutory construction to determine whether Congress had an intention on the precise question at issue."  *Lin-Zheng v. Att'y Gen.*, 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (internal quotation and citation omitted).  If Congress' intent is clear, our inquiry is at an end as the agency is required to give effect to the unambiguously expressed intent of Congress.  *Chevron*, 467 U.S. at 842-43.  If the statute is ambiguous, we move to step two and determine if the agency's interpretation of the statute, as expressed in the regulation, is reasonable and entitled to deference.  *Id.*

## III.

### A.

Before delving into the *Chevron* analysis, we briefly outline the relevant statutory and regulatory framework.  The

---

[2] We have jurisdiction to review questions of law with respect to a final order of removal under 8 U.S.C. § 1252(a).

regulatory right to file a motion to reopen or reconsider with the BIA has existed since 1940. 5 Fed. Reg. 3502, 3504 (Sept. 4, 1940) (codified at 8 C.F.R. §§ 90.9-90.10 (1941)). In 1952, the Department of Justice ("DOJ") issued a regulation barring the BIA from reviewing such a motion filed by a person no longer present in the United States. 17 Fed. Reg. 11469, 11475 (Dec. 19, 1952) (codified at 8 C.F.R. § 6.2 (1953)).

That same year, 1952, Congress passed the McCarran-Walter Act, which established the structure of current immigration laws. Pub. L. No. 82-414, § 242(c), 66 Stat. 163, 210 (1952) (codified at 8 U.S.C. § 1252(c) (1952)). In 1961, Congress amended the law to provide courts of appeals with jurisdiction to review final orders of deportation through a petition for review. Pub. L. No. 87-301, § 5(a), 75 Stat. 650, 651 (1961) (codified at 8 U.S.C. § 1105a(c) (1962)). However, the 1961 amendment contained a post-departure provision paralleling the regulatory post-departure bar on motions to reopen/reconsider. Specifically, the 1961 amendment provided: "An order of deportation or of exclusion shall not be reviewed by any court if the alien . . . has departed from the United States after issuance of the order." *Id.* The DOJ issued implementing regulations whereby it repromulgated the post-departure bar to motions to reopen/reconsider. 27 Fed. Reg. 96, 96-97 (Jan. 5, 1962) (codified at 8 C.F.R. § 3.2 (1962)). In April 1996, the DOJ issued a regulation limiting aliens to one motion to reopen and one motion to reconsider and providing 90 and 30 days respectively for the alien to file each motion. 61 Fed. Reg. 18900, 18901-5 (Apr. 29, 1996) (codified at 8 C.F.R. § 3.2 (1997)).

Shortly thereafter, Congress passed IIRIRA, which made several significant changes to immigration law. Pub L. No. 104-208, div. C, 110 Stat. 3009-546 (1996). For the first time, Congress created a statutory right for the alien to file a motion to reconsider and a motion to reopen with the BIA (previously such a right existed only pursuant to regulation). IIRIRA § 304(a)(3) (currently codified at 8 U.S.C. §

1229a(c)(6), (7)).  Congress also codified in the statute some of the pre-existing regulatory limitations for such motions, including the substantive requirements for motions to reopen, the numeric limitation and time limits.  *Id.*  Notably, when Congress enacted IIRIRA in 1996, it did not codify or adopt the post-departure bar regulation.  *See Dada v. Mukasey*, 554 U.S. 1, 14 (2008) (outlining the regulations IIRIRA codified).

IIRIRA also repealed the post-departure bar to judicial review of petitions for review that Congress originally imposed in 1961.  IIRIRA § 306(b), 110 Stat. 3009-612 (repealing 8 U.S.C. § 1105a).  Additionally, Congress adopted a 90-day period for the government to deport a person who has been ordered removed.  IIRIRA § 305(a)(3) (currently codified at 8 U.S.C. § 1231(a)(1)).

In 1997, the DOJ promulgated regulations implementing IIRIRA.  Notwithstanding the fact that Congress had for the first time codified the right for an alien to file motions to reconsider and reopen with the BIA and eliminated the post-departure bar for judicial review, the DOJ repromulgated the post-departure bar for motions to reconsider/reopen filed with the BIA, the regulation at issue in this case.  62 Fed. Reg. 10312, 10321, 10331 (Mar. 6, 1997) (currently codified at 8 C.F.R. § 1003.2(d)).  The post-departure bar regulation currently provides: "A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion."  8 C.F.R. § 1003.2(d).

## B.

With that background before us, we move to the *Chevron* statutory analysis.  "[T]he starting point for

6

interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). The Supreme Court has instructed that "we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *United States v. Heirs of Boisdore*, 49 U.S. 113, 122 (1850).

The motion to reconsider provision of IIRIRA provides that "[t]he alien may file one motion to reconsider a decision that the alien is removable from the United States." 8 U.S.C. § 1229a(c)(6)(A). Similarly, § 1229a(c)(7)(A) provides that "[a]n alien may file one motion to reopen proceedings." It follows from the plain language of this statute that from the date of the final order of removal, the alien has 30 days to exercise his or her right to seek reconsideration and 90 days to seek reopening. *Id.* § 1229a(c)(6)(B), (7)(C)(i). The INA defines "alien" broadly as "any person not a citizen or national of the United States." INA § 101(a)(3), 8 U.S.C. § 1101(a)(3). To repeat, the plain text of the statute provides each alien with the right to file one motion to reopen and one motion to reconsider, provides time periods during which an alien is entitled to do so, and makes no exception for aliens who are no longer in this country.

Based on this plain language, the Fourth, Sixth, and Ninth Circuits have squarely held under *Chevron* that the post-departure bar conflicts with the statutory right to file a motion to reopen and/or reconsider.[3] The Fourth Circuit held that the regulatory post-departure bar is invalid because the statute "unambiguously provides an alien with the right to file one motion to reopen, regardless of whether he is within or

---

[3] Although some of the cases discussed herein deal with motions to reopen and this case deals with a motion to reconsider, the analysis for each is the same and the cases are therefore instructive. For that reason, and because the post-departure bar to motions to reopen and reconsider is contained in a single regulation, if it is invalid it is invalid with respect to both kinds of motions.

without the country.  This is so because, in providing that '*an alien* may file,' the statute does not distinguish between those aliens abroad and those within the country—both fall within the class denominated by the words 'an alien.'" *William v. Gonzales*, 499 F.3d 329, 332 (4th Cir. 2007).

Similarly, the Sixth Circuit held that "no statute gives the [BIA] purchase for disclaiming jurisdiction to entertain a motion to reopen filed by aliens who have left the country. The most relevant statute, [IIRIRA], offers nothing to support such an interpretation of the regulation.  'An alien,' it says, 'may file one motion to reopen proceedings under this section . . . .'  This is an empowering, not a divesting, provision, as it grants the Board authority to entertain a motion to reopen." *Pruidze v. Holder*, 632 F.3d 234, 237-38 (6th Cir. 2011).

Consistent with its two sister courts, the Ninth Circuit has held that the "clear intent" of Congress was to provide aliens with the right to file a motion to reopen and/or reconsider and that the "physical removal of [an alien] by the United States does not preclude the [alien] from pursuing" that motion.  *Reyes-Torres v. Holder*, --- F.3d ----, 2011 U.S. App. LEXIS 7062, at *8 (9th Cir. Apr. 7, 2011) (quoting *Coyt v. Holder*, 593 F.3d 902, 907 (9th Cir. 2010)).  And over the contrary view of his colleagues, a dissenting judge from the Tenth Circuit reasoned that IIRIRA "unambiguously guarantee[s] every alien the right to file one motion to reconsider removability and one motion to reopen removal proceedings, regardless of whether the alien has departed from the United States."  *Rosillo-Puga v. Holder*, 580 F.3d 1147, 1162 (10th Cir. 2009) (Lucero, J., dissenting).  We agree with these cases and adopt their analyses.

Moreover, two other circuits, including the Seventh Circuit and, in part, the Sixth Circuit, have invalidated the post-departure bar based on the Supreme Court's decision in *Union Pac. R.R. v. Bhd. of Locomotive Eng'rs*, 130 S. Ct. 584, 590 (2009).  *See Pruidze*, 632 F.3d at 237-40 (invalidating the regulation based on both *Chevron* and *Union Pacific*); *Marin-Rodriguez v. Holder*, 612 F.3d 591, 594-95 (7th Cir. 2010)

8

(invalidating the regulation solely on *Union Pacific*). In *Union Pacific*, the Supreme Court held that an administrative agency cannot rely on an agency-created procedural rule to disclaim jurisdiction—Congress alone controls the agency's jurisdiction. Therefore, the Sixth and Seventh Circuits reasoned that the BIA lacked authority to disclaim jurisdiction over the motions. [4]

The Second Circuit's analysis in *Luna v. Holder*, 637 F.3d 85 (2d Cir. 2011), provides additional reinforcement for the view that the post-departure bar cannot be sustained. In that case, the court addressed whether the 30-day filing deadline for petitions for review of BIA decisions violated the Suspension Clause and the alien's right to habeas corpus. In holding that the Suspension Clause was not violated, the court held that the statutory motion to reopen process provides an adequate and effective substitute for habeas so long as the process "cannot be unilaterally terminated by the Government" pursuant to the BIA's post-departure bar. *Id.* at 87. Although the Second Circuit "decline[d] to decide the validity of the departure bar regulation . . . in every possible context," the court commented that the post-departure bar "has no roots in any statutory source" and that "the BIA must consider an alien's motion to reopen even if the alien is no

---

[4] Although the Supreme Court did not discuss *Chevron* in *Union Pacific*, it is not clear to us that the *Chevron* question and jurisdictional question are entirely distinct. *See Pruidze*, 632 F.3d at 237 ("There is some question whether *Chevron* applies to disputes about the scope of an agency's jurisdiction."). In the context of this case, both inquiries center on whether the agency has the authority to enact a rule that prevents it from hearing motions to reopen/reconsider and therefore both inquiries center on Congress' intent. Because we decide the case based on *Chevron*, we need not definitively resolve whether *Union Pacific* presents a distinct question. That said, to the extent the Sixth and Seventh Circuits found the regulation invalid, they support our ultimate holding.

longer in the United States." *Id.* at 102 (internal quotation omitted).

Our holding that the plain text of the statute leaves no room for the post-departure bar also finds some support in the Supreme Court's decision in *Dada*, 554 U.S. 1. There, the Court was asked to reconcile two provisions of IIRIRA: § 1229a(c)(7) which provides that an alien has the right to file one motion to reopen within 90 days of the order of deportation and § 1229c(b)(2) which requires an alien who has been granted the right to voluntarily depart to do so within 60 days.[5] If the alien does not leave within the voluntary departure period, the alien forfeits his or her right to the full benefits of voluntary departure (in particular, removal of the 10-year restriction on readmission). *See* 8 U.S.C. § 1229c(d)(1). On the other hand, if the alien departs pursuant to the post-departure bar regulation, such departure would have the effect of withdrawing the motion to reopen. *See* 8 C.F.R. § 1003.2(d). Significantly, the Court noted that "[a] more expeditious solution to the untenable conflict between the voluntary departure scheme and the motion to reopen might be to permit an alien who has departed the United States to pursue a motion to reopen postdeparture." *Dada*, 554 U.S. at 22. However, because the post-departure regulation was not challenged in that case (as it is here) the Court declined to consider the regulation. *Id.*

Accordingly, the Supreme Court was required to decide "whether Congress intended the statutory right to reopen to be qualified by the voluntary departure process." *Id.* at 5. The government argued that by requesting voluntary departure, the alien was knowingly surrendering the opportunity to seek reopening. The Court rejected this argument and instead held that the appropriate way to reconcile the voluntary departure and motion to reopen

---

[5] The time limit for voluntary departure is extended to 120 days if the alien concedes removability before or during removal proceedings. 8 U.S.C. § 1229c(a)(2)(A).

10

provisions "is to allow an alien to withdraw the request for voluntary departure before expiration of the departure period" and file the motion to reopen. *Id.* at 20.

Although the holding of *Dada* does not directly implicate the issue presented here, the Court's repeated emphasis on the statutory right to file a motion to reopen, and the effort of the Court to avoid abrogating that right (even in the face of another *statutory* provision which conflicted), inform our analysis. Specifically, the Supreme Court noted that IIRIRA "transforms the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien." *Id.* at 14. It also noted that the "statutory text is plain insofar as it guarantees to each alien the right to file 'one motion to reopen proceedings under this section.'" *Id.* at 15 (quoting 8 U.S.C. § 1229a(c)(7)(A)). The Court echoed its prior admonition "counseling long hesitation 'before adopting a construction of [the statute] which would, with respect to an entire class of aliens, completely nullify a procedure so intrinsic a part of the legislative scheme.'" *Id.* at 18-19 (quoting *Costello v. INS*, 376 U.S. 120, 127-28 (1964)).[6]

The Court concluded that it "must be reluctant to assume" that the voluntary departure statute removed the motion to reopen safeguard for the distinct class of deportable aliens most favored by the same law (that is, those subject to voluntary departure) "particularly . . . when the plain text of the statute reveals no such limitation." *Id.* at 18. The Court did not see the limitation at issue in the plain text of the statute and refused to read one in, notwithstanding the competing statutory and regulatory provisions. *See also Kucana v. Holder*, 130 S. Ct. 827, 834 (2010) ("The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings.") (quoting *Dada*, 554 U.S. at 18).

---

[6] At argument, the government conceded that the Supreme Court's emphasis on the statutory right to reopen was, to say the least, significant.

In sum, the *Dada* opinion emphasizes the importance of the statutory right to file a motion to reopen based on the plain text of the statute.

The government contends that nothing in the text of the statute explicitly precludes the agency from imposing the post-departure bar. In other words, it argues that the statute is silent on this issue. The government supports this argument by reliance on the Tenth Circuit decision in *Rosillo-Puga*, 580 F.3d 1147, the only court of appeals decision explicitly upholding the validity of the post-departure bar. That court held that "the statute is simply silent on the issue of whether it meant to repeal the post-departure bars contained in the Attorney General's regulations. We certainly cannot derive a clear meaning from the language about 'an alien' or 'the alien' having the opportunity to file 'one' motion for reopening or reconsideration." *Id.* at 1156-57.[7]

However, as explained by the Fourth Circuit majority opinion in *William,* "the government's view that Congress was silent as to the ability of aliens outside the United States to file motions to reopen is foreclosed by the text of the statute. The statutory language *does* speak to the filing of motions to reopen by aliens outside the country; it does so because they are a subset of the group (*i.e.* 'alien[s]') which it vests with the right to file these motions." 499 F.3d at 332. The same point is made by the dissenting Tenth Circuit judge in *Rosillo-Puga:* "The language Congress chose is plain and

_____

[7] The dissenting judge in the Fourth Circuit's *William* decision*,* 499 F.3d at 336 (Williams, C.J., dissenting) held a similar view: "[The statute] does not explicitly prohibit or permit motions to reopen made after departure. The provision simply does not speak to that question. And it is hardly surprising that the provision does not distinguish between classes of aliens, for the provision's purpose is to limit the number of motions to reopen that an alien may file."

12

unequivocal.  It draws no distinction between aliens who are in the country and aliens who have departed.  All aliens are treated alike under the terms of [the statute], and all aliens are guaranteed the right to file one motion to reconsider and one motion to reopen."  580 F.3d at 1162. (Lucero, J., dissenting).[8]

The government manufactures an ambiguity from Congress' failure to specifically foreclose each exception that could possibly be conjured or imagined.  That approach would create an "ambiguity" in almost all statutes, necessitating deference to nearly all agency determinations.  Nothing in the Supreme Court's *Chevron* opinion suggests this result, which is inconsistent with traditional modes of statutory interpretation.  *See Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S. Ct. 2710, 2715 (2009) ("the presence of some uncertainty does not expand *Chevron* deference to cover virtually any interpretation of [the statute]").

We have rejected similar efforts to create ambiguity.  For example, in our unanimous en banc decision in *Lin-*

---

[8] We are not persuaded by the government's contention that the First Circuit's decision in *Pena-Muriel v. Gonzales*, 489 F.3d 438 (1st Cir. 2007), directly supports its position.  In *Pena-Muriel*, the court was addressing the validity of 8 C.F.R. § 1003.23(b)(1), which bars motions to reopen with the immigration judge post-departure, not with the BIA.  Moreover, the thrust of Pena-Muriel's argument was that IIRIRA signaled Congress' intent to withdraw the post-departure bar, rather than that the re-promulgated regulation conflicted with IIRIRA.  *Id.* at 441; *see also Pena-Muriel v. Gonzales*, 510 F.3d 350 (1st Cir. 2007) (denial of panel rehearing) ("[W]e did not decide whether 8 C.F.R. § 1003.23(b)(1) conflicts with 8 U.S.C. § 1229a(c)(7).").  To the extent that the decision does hold that Congress did not explicitly address the validity of the post-departure bar, it adds little to the Tenth Circuit's analysis in *Rosillo-Puga.*

*Zheng*, 557 F.3d at 157, we held that a provision of the INA that granted refugee status to persons forced to undergo sterilization or abortion was unambiguous and that the agency interpretation permitting spouses of such persons to seek refugee status was impermissible. The statute was not ambiguous merely because it did not expressly preclude spouses from relief. As we explained, a "statute's silence on a given issue does not confer gap-filling power on an agency unless the question is in fact a gap–an ambiguity tied up with the provisions of the statute." *Id.* at 156 (internal quotation omitted).

We rejected a similar statutory argument in *De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 353 (3d Cir. 2010). Petitioners who sought temporary protected status under the INA contended that their parents' residency could satisfy the continuous residency requirements. They argued that the statute was ambiguous because the "statute does not explicitly permit or disallow it and therefore there is no 'plain meaning.'" *Id.* We rejected this argument and held that the relevant provision was not "'ambiguous' merely because it does not expressly forbid every possible mechanism for functional – but not actual – satisfaction of statutory requirements. Else, near every statute would be 'ambiguous' and courts would have unfettered freedom to fashion creative mechanisms for satisfying the otherwise clear requirements mandated by Congress." *Id.*

The same holds true here. Although we refrain from conjecturing that Congress' failure to specifically exclude a limitation is never sufficient by itself to create ambiguity, we conclude that, in this case, there is no statutory "gap" that warrants the regulation. *See Pruidze*, 632 F.3d at 240 ("We defer to an agency's efforts to fill statutory gaps, not to create them, and in this instance Congress left no gap to fill when it empowered the agency to consider all motions to reopen filed by an alien, not just those filed by aliens who remain in the United States up to the time of decision."); *Rosillo-Puga*, 580 F.3d at 1163 (Lucero, J., dissenting) ("Under the [government's] approach, *Chevron* would require that

14

Congress expressly enumerate all that an agency *cannot do* before we may conclude that Congress has directly spoken to the precise question at issue. The [government] would thus preclude customary expression of Congressional intent by the use of expansive and inclusive permissions such as those in § 1229a(c)(6)(A) and (7)(A).") (internal quotation omitted).

In addition to the plain and empowering language of the motion to reopen/reconsider provisions, the statute contains other compelling evidence of Congress' clear intent. *See United States v. Geiser*, 527 F.3d 288, 292 (3d Cir. 2008) ("At step one, we consider the text and structure of the statute in question."); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning–or ambiguity–of certain words or phrases may only become evident when placed in context.").

The text of IIRIRA makes clear that Congress considered exceptions to or limitations on the right to file a motion to reopen/reconsider and did, in fact, include some limitations. *See Dada*, 554 U.S. at 14 ("The Act, to be sure, limits in significant ways the availability of the motion to reopen."). For example, as discussed above, in 1996 Congress codified the regulation that imposed time and numerical restrictions. Congress also codified the requirement that motions to reopen be based on new evidence. *See id.* at 13-14. As the Supreme Court has explained, "[w]hen Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000). That inference is particularly strong when, as here, Congress specifically codified other regulatory limitations already in existence. Congress did not codify the post-departure bar notwithstanding its long history. Neither we nor the agency should be permitted to override Congress' considered judgment.[9]

---

[9] The government attempts to refute this analysis by

arguing that Congress was aware of the regulatory post-departure bar when it passed IIRIRA and failed to specifically revoke it. Ergo, argues the government, Congress implicitly left its imprimatur on the regulation. The government urges that we follow *Commodity Futures Trading Comm'n. v. Schor*, where the Supreme Court held that "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." 478 U.S. 833, 846 (1986) (internal quotation omitted).

This argument fails for two reasons. First, in IIRIRA, Congress did not merely revisit a preexisting statute "without [making] pertinent change[s]." As outlined, Congress made significant changes, codifying some regulations while ignoring others. In such a situation, the *Schor* presumption lacks logical force, and Congress' nuanced consideration of which limitations and regulations to codify offers stronger evidence of Congress' intent than does Congress' alleged "silence" with respect to the pre-existing post-departure regulation. As the Supreme Court has explained in rejecting this very argument in a similar context, "[t]here is an obvious trump to the reenactment argument, however, in the rule that where the law is plain, subsequent reenactment does not constitute an adoption of the previous administrative construction." *Brown v. Gardner*, 513 U.S. 115, 121 (1994) (internal quotation and alteration omitted).

Second, as noted by the Sixth Circuit in *Pruidze*, when Congress passed IIRIRA in 1996, "there was no statutory provision [regarding motions to reopen/reconsider] to 'revisit.' Until then, Congress had not spoken about motions to reopen[/reconsider] and thus it had said nothing that could give rise to an

16

Moreover, as evident from the statutory post-departure bar to judicial review that existed from 1961 until 1996, Congress knew how to codify post-departure limitations, but chose not to do so in 1996 when it significantly revised the immigration landscape. IIRIRA § 306(b), 110 Stat. 3009-612 (repealing 8 U.S.C. § 1105a). *See Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."); *Lin-Zheng*, 557 F.3d at 156 ("Had Congress wished to extend [the statute], it could easily have [done so].").

By repealing the post-departure bar to petitions for review before courts of appeals, IIRIRA gave aliens greater opportunity for review of deportation orders than they had previously. This is consistent with IIRIRA's dual objectives "to expedite the physical removal of those aliens not entitled to admission to the United States, while at the same time increasing the accuracy of such determinations." *Coyt*, 593 F.3d at 906. Congress could not have intended to undermine the second part of that goal—accuracy in determinations—by preventing aliens from filing motions for review with the BIA post-departure while simultaneously allowing aliens to seek even higher review with courts of appeals. As the Supreme Court has noted, "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513

agency interpretation that Congress could codify. The Attorney General had adopted the departure bar in accordance with his then-unlimited authority over motions to reopen." 632 F.3d at 240. Indeed, even the First Circuit, which upheld the post-departure bar to IJ reopening, noted that "[t]he government's insistence that the Attorney General's interpretation was the one intended by Congress [based on *Schor*] may be overreaching." *Pena-Muriel*, 489 F.3d at 443. Accordingly, the *Schor* presumption does not control.

U.S. 115, 118 (1994). In this case, the context provided by Congress' repeal of the statutory post-departure bar to judicial review provides additional clarity regarding Congress' intent.

An attempt to reconcile the post-departure bar with the time allowances for filing motions to reopen/reconsider reinforces the conclusion that Congress' intent is clear and that the regulation is invalid. Congress provided each alien with the right to file one motion to reconsider within 30 days of the final order of deportation and one motion to reopen within 90 days. The government is required to remove an alien from the United States within 90 days of the final order of deportation. 8 U.S.C. § 1231(a)(1)(A). As the Ninth Circuit has explained, "[i]t would completely eviscerate the statutory right to reopen provided by Congress if the agency deems a motion to reopen constructively withdrawn whenever the government physically removes the [alien] while his motion is pending before the BIA." *Coyt*, 593 F.3d at 907. *See also Madrigal v. Holder*, 572 F.3d 239, 244-45 (6th Cir. 2009) (holding that the post-departure bar to appeals from the IJ to the BIA is inapplicable when the petitioner is forcibly removed during the pendency of his appeal). As we held in *Barrios v. Att'y Gen.*, 399 F.3d 272, 278 (3d Cir. 2005), "it is contrary to congressional intent to allow aliens to file motions to reopen but afford them no reasonable opportunity to receive a ruling on the merits." Similarly, if aliens are permitted to file motions to reconsider but are then removed by the government before the time to file has expired, the right to have that motion adjudicated is abrogated.

Another portion of the statute further cements the view that the post-departure bar regulation conflicts with the statutory right to file motions to reopen/reconsider. In 2000, Congress enacted a special rule that exempted victims of domestic violence from the time limit on filing motions to reopen. Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, div. B, § 1506(c), 114 Stat. 1464, 1528 (2000) (currently codified at 8 U.S.C. § 1229a(c)(7)(C)(iv)). In 2005, Congress restricted the exception so that it only applied "if the alien is physically

18

present in the United States at the time of filing the motion." Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 825(a)(2)(F), 119 Stat. 2960, 3063-64 (2006) (codified at 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV)).  There would be no need to provide such a requirement if motions to reopen could not be filed once the alien was outside of the country.

Congress' requirement that domestic violence victims must remain in the United States to file their motions to reopen out of time stands in contrast to Congress' failure to provide a physical presence requirement for all aliens timely filing a motion to reopen/reconsider.  We turn to the canon of statutory construction that where Congress "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation omitted).  If we uphold the regulation and find that physical presence in the United States is required before any motion to reopen/reconsider can be filed, we "would render the physical presence requirement expressly written into [the domestic abuse subsection] mere surplusage." *William*, 499 F.3d at 333.  And it "is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation omitted).

The government attempts to downplay the significance of the physical presence requirement in the domestic violence exception in two ways.  First, it notes that the domestic violence physical presence language was added to the statute after IIRIRA was originally enacted.  This is of no moment.  Irrespective of when the language was added, it is present now and we should not read it out of the statute.

Second, the government claims that the domestic violence exception was enacted as part of larger legislation

19

relating to domestic violence and therefore does not speak to Congress' intent regarding the post-departure bar. The Supreme Court has specifically noted that "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically on the topic at hand." *Brown & Williamson Tobacco Corp.*, 529 U.S. at 133. That is precisely what occurred here. When Congress amended the domestic violence exception, it was undoubtedly aware of the whole text of the statute, saw that there was no physical presence requirement generally, and decided to include such a requirement as a prerequisite to harnessing the exception.

In summary, the post-departure bar regulation conflicts with Congress' clear intent for several reasons. First, the plain text of the statute provides each "alien" with the right to file one motion to reopen and one motion to reconsider. Second, the importance and clarity of this right has been emphasized by the Supreme Court in *Dada*. Third, Congress specifically considered and incorporated limitations on this right and chose not to include the post-departure bar, despite its prior existence in regulation. Fourth, the post-departure bar would eviscerate the right to reopen/reconsider by allowing the government to forcibly remove the alien prior to the expiration of the time allowance. Fifth, Congress included geographic limitations on the availability of the domestic violence exception, but included no such limitation generally. Sixth, Congress specifically withdrew the statutory post-departure bar to judicial review in conformity with IIRIRA's purpose of speeding departure, but improving accuracy. The regulatory post-departure bar to BIA motions to reopen/reconsider, if permitted, would undermine those dual objectives and conflict with the clear intent of Congress.

## IV.

For the foregoing reasons, we will reverse the decision of the BIA and remand for proceedings consistent with this opinion.