# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 27, 2012

Nos. 11-60549
&
11-60706

Lyle W. Cayce
Clerk

GIBRIEL LARI, also known as Lari Gibriel,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Petitions for Review of an Order of the
Board of Immigration Appeals

Before JOLLY, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Gibriel Lari is a Ghanaian citizen who, in 2010, was charged with being removable because he was an alien present in the United States without being admitted or paroled. That same year, Lari applied for asylum. After conducting a hearing, an Immigration Judge denied Lari's request for asylum, withholding of removal, and Convention Against Torture protection. Lari appealed the Immigration Judge's decision to the Board of Immigration Appeals.

In July 2011, the Board dismissed Lari's appeal. On August 2, 2011, Lari filed a motion to reconsider, which was denied by the Board the following month.

Nos. 11-60549 & 11-60706

In denying his motion, the Board concluded that it lacked jurisdiction over his motion because Lari was removed on August 23, 2011.

Lari has filed two petitions for review.  The first petition seeks review of the dismissal of his appeal; the second petition requests review of the denial of his motion to reconsider.  For the following reasons, we deny his first petition and grant his second petition for review.

## I.

## A.

Gibriel Lari is a native and citizen of Ghana.  Prior to April 2008, Lari worked as a representative for a shipping company in China.  This company was used by Ghanaians to ship products they purchased in China back home to Ghana.

In April 2008, the shipping company went out of business.  According to Lari, the company failed because the owner was stealing both the goods his company was entrusted to ship and the money that was paid for shipping.  After the company's dissolution, Lari left China and went to Thailand.  One month into his stay in Thailand, Lari packed his bags and flew to Mexico.

During his time in Mexico, Lari met a woman online and, while visiting her, was kidnapped.  The kidnappers requested a ransom that was subsequently paid by Lari's mother.  After the payment of the ransom, Lari was released inside the United States in March 2009.  According to his testimony, he entered the United States in Tucson.

Lari spent a couple of months in Tucson before moving to Phoenix.  He had difficulties obtaining work in Phoenix given his lack of proper documentation and, after spending a couple months there, decided to head to New York.  On his way to New York, he was stopped at a Border Patrol checkpoint.

A Notice to Appear was issued on July 20, 2010.  In it, the Department of Homeland Security alleged that Lari (1) was not a citizen or national of the

2

Nos. 11-60549 & 11-60706

United States; (2) was a native and citizen of Ghana; (3) arrived in the United States at or near Tucson on or about May 15, 2010; and (4) was neither inspected nor admitted by a Customs and Border Protection Officer of the Department of Homeland Security.  Based on these allegations, Lari was charged with being removable because he was an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Secretary of [the] Department of Homeland Security."

## B.

### 1.

After he was placed in removal proceedings, Lari attended a group removal hearing on September 15, 2010.  Once he finished accepting pleadings and requests from individuals who were represented by counsel, the Immigration Judge addressed those individuals who were unrepresented, including Lari.

The Immigration Judge began by advising them of, among other things, their right to an attorney, to a hearing, and to appeal his decision to the Board. The Immigration Judge then provided them a chance to declare their intention of obtaining a lawyer.  He subsequently asked the group the following three questions: (1) "If any of you were born in the United States of America or any of our territories overseas would you please stand at this time?"; (2) "If your mother or your father is or has ever been a citizen of the United States would you please stand[?]"; and (3) "If you are going to claim you are a citizen or national of the United States would you please stand at this time?"  No one stood in response to these questions.

Once this brief line of inquiry ended, the Immigration Judge addressed several individuals who were charged with removability on several separate grounds.  At the conclusion of that portion of the proceedings, he turned his

3

attention to those individuals who, like Lari, had been "charged with being physically present in the United States without admission or parole by an Immigration officer." After announcing this charge, the Immigration Judge then asked members of the group to stand if they contested the charge or thought it was incorrect. No one stood in response to this question.

Also in this portion of the hearing, the Immigration Judge asked the remaining individuals a series of four questions to find out if any of them were eligible to apply for relief from deportation. For the fourth question, he asked if any of these individuals had a "well-founded fear of persecution" or feared "torture at the hands of the government or anyone else that they [could not] control in [their] home country[.]" At this point, Lari stood up to affirmatively respond to the question. The Immigration Judge then asked Lari to have a seat at a table and told Lari he wanted to talk to him in private about his response.

After discussing voluntary departure with the other remaining members of the original group, the Immigration Judge turned his attention back to Lari who, by then, had already filed an application for asylum.[1] During their brief discussion, Lari told the Immigration Judge that he was a native and citizen of Ghana and that he had entered the United States in May 2010. The Immigration Judge then set an expedited asylum hearing for December 27, 2010.

---

[1] In the asylum application he filed on the date of the group removal hearing, Lari stated that he was a Muslim from Ghana and belonged to the Chada ethnic group. He also indicated that his last address before coming to the United States was in Accra, Ghana.

Although he did not provide any statutory basis for asylum, he did check a box indicating that he was seeking withholding of removal under the Convention Against Torture. As the basis for his claimed fear of returning to Ghana, Lari stated, "[I] [f]ear torture from the company failure and I would be held accountable for this failure." Later in his petition, he declared that he believed he would be tortured in Ghana because he would be held accountable for the "unsuccessful [conclusion] of the company business operations."

Nos. 11-60549 & 11-60706

**2.**

Despite being scheduled for December 27, 2010, Lari's asylum hearing was held on February 16, 2011. At the beginning of the hearing, the Immigration Judge stated the following:

> This case began with the issuance of a Notice to Appear by the Department of Homeland Security on July 20, 2010; subsequently filed with the Court the next day. During the course of a Master Calendar hearing conduced on September 15, 2010, [Lari] admitted the factual allegations contained in the Notice to Appear. The Court does not accept concessions of deportability from unrepresented Respondents, but based on the un-controverted admissions the Court finds [Lari] is physically present in [the] United States without admission or parole by an Immigration officer in violation of 21(a)(6)(A)(i) of the Immigration and Nationality Act.

After proceeding to take an inventory of the exhibits before him, the Immigration Judge moved on to asking Lari questions about his application. During this questioning, Lari told the Immigration Judge about the problems experienced by the company he worked for in China, his stops in Thailand and Mexico, and the circumstances surrounding his arrival in the United States.

Lari also provided additional details regarding his fear of returning to Ghana. In response to the Immigration Judge's questioning, Lari stated that the customers who lost their money and goods were looking for the unscrupulous owner of the shipping company, but could not find him. Because the customers could not locate the owner, Lari stated that these people were holding him responsible for their losses. Lari testified that some of these customers threatened either to torture or kill him.

**3.**

Despite finding Lari's testimony "direct, plausible, and credible," the Immigration Judge denied relief and ordered that Lari be removed. Lari then appealed the Immigration Judge's decision. On appeal to the Board, Lari raised

Nos. 11-60549 & 11-60706

a number of alleged substantive and procedural defects in the proceedings before the Immigration Court. The Board rejected Lari's arguments and dismissed his appeal on July 14, 2011.

Two weeks later, Lari filed a motion to reconsider. While his motion was pending, Lari was removed from the United States. Given his removal, the Board applied the departure regulation, 8 C.F.R. § 1003.2(d), concluded that it lacked jurisdiction over the motion to reconsider, and denied Lari's motion on this basis.

Two petitions are presently before us. The first petition for review involves the Board's dismissal of Lari's appeal. The second relates to the denial of his motion to reconsider.

## II.

## A.

Lari's two petitions raise distinct issues. In his first petition, Lari asserts that he was not properly found to be removable. According to him, the Immigration Judge did not take the required pleading prior to sustaining the charge of removability. In addition, Lari contends that he was erroneously denied asylum, withholding of removal, and Convention Against Torture protection. As his final set of arguments in his first petition, Lari maintains that the Immigration Judge violated several statutory and regulatory provisions in conducting his removal proceedings. Lari's second petition involves a narrow question of law: whether the departure regulation provides a valid basis for denying his motion to reconsider.

After briefing on these two petitions was completed, the Attorney General filed a motion to remand the proceedings related to Lari's first petition. In this motion, the Attorney General raised questions regarding the adequacy of the pleading that was used to sustain Lari's charge of removability. In light of these

6

questions, we will refrain from addressing the substance of Lari's first petition. We will instead focus our attention on his second petition.

**B.**

The Board applied the following regulation in denying Lari's motion to reconsider:

> A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

8 C.F.R. § 1003.2(d). This regulation, which has an analogue applicable to proceedings before an Immigration Court, *see* 8 C.F.R. § 1003.23(b)(1), is what has thus far been referred to as the departure regulation.

In a companion case, we concluded that, under *Chevron*, the departure regulation could not be applied to statutorily authorized motions to reopen. *See Garcia Carias v. Holder*, 11-60550. In this case, we follow a similar analysis and hold that the departure regulation also cannot be applied to statutorily authorized motions to reconsider.

**1.**

When it comes to the Board's interpretation of immigration statutes, we defer to the extent prescribed by the two-step analysis set forth in *Chevron*. *Khalid v. Holder*, 655 F.3d 363, 366 (5th Cir. 2011) (citation omitted). Under *Chevron*'s first step, we must determine whether the statute at issue is ambiguous. "'If the intent of Congress is clear,'–that is, the statute is unambiguous with respect to the question presented– 'the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467

Nos. 11-60549 & 11-60706

U.S. 837, 842-43 (1984)).  To determine whether a statute is ambiguous, we must employ the traditional tools of statutory interpretation.  *Id.* (citation omitted).  "Chief among these, of course, is the 'plain language of the statute.'"  *Id.* (quoting *In re Dale*, 582 F.3d 568, 573 (5th Cir. 2009)).

If a provision is ambiguous as to the question presented, the analysis proceeds to *Chevron*'s second step, which asks "whether the agency's answer is based on a permissible construction of the statute."  *Id.* (citation omitted).  In considering this second step, we may evaluate "'only whether the decision is arbitrary, capricious, or manifestly contrary' to the statute, and may not substitute our own judgment 'for a reasonable alternative formulated by the [Board].'"  *Id.* (quoting *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 253 (5th Cir. 2005)).

**2.**

By statute, an alien has the right to file one motion to reconsider.  8 U.S.C. § 1229a(c)(6)(A);  *cf. Dada v. Mukasey*, 554 U.S. 1, 15 (2008) (interpreting an analogous statutory provision as creating a right to pursue a motion to reopen).  The statute specifically states the following: "The alien may file one motion to reconsider a decision that the alien is removable from the United States."  8 U.S.C. § 1229a(c)(6)(A).  As is evident by its clear terms, the statute does not distinguish between those aliens who are abroad and those who remain in the United States–the unmodified "alien" captures both.  Congress could have, but did not, distinguish between the two classes of aliens in creating this right to file a motion to reconsider.  Under our reading, the statute is facially unambiguous.  Because the statute is facially unambiguous, we adhere to its plain meaning.  *See Cheshire v. Comm'r*, 282 F.3d 326, 336-37 (5th Cir. 2002) ("Unless the text of a statute is ambiguous on its face, this court adheres to that statute's plain meaning.").  Giving the statute its plain meaning, we conclude that an alien's ability to exercise his statutory right to file a motion to reconsider is not

contingent upon his presence in the United States. The departure regulation therefore cannot serve as a basis for denying aliens who have departed the United States their statutorily authorized right to file one motion to reconsider.[2]

### III.

For these reasons, we GRANT Lari's second petition for review and REMAND to the Board for proceedings consistent with this opinion. In light of this remand, we DENY his first petition for review and thus leave unanswered the questions regarding whether Lari was properly found to have been removable. We also DENY any pending motions.

---

[2]  This conclusion is consistent with the decision of the only other circuit to address this specific issue. *See Prestol Espinal v. Att'y Gen.*, 653 F.3d 213 (3d Cir. 2011) (in the context of statutorily authorized motions for reconsideration, holding that the "post-departure bar regulation conflicts with Congress' clear intent for several reasons"). It is also in harmony with our recent decision examining the relationship between the departure regulation and motions to reopen brought under a textually analogous statutory provision. *See Garcia Carias v. Holder*, 11-60550 (holding that the departure regulation could not be applied to motions to reopen brought under 8 U.S.C. § 1229a(c)(7)(A)).

Nos. 11-60549 & 11-60706

Harold R. DeMoss, Jr., Circuit Judge, dissenting:

For the same reasons identified in my dissent to the majority's opinion in *Garcia-Carias v. Holder*, No. 11-60550, I dissent from the majority's decision in this case.[1]  Here, the majority holds that the departure bar to motions for reconsideration fails *Chevron* step one in light of 8 U.S.C. § 1229a(c)(6)(A).  The majority opinion relies entirely on the plain language of the statute, which it notes is "textually analogous" to the statute at issue in *Garcia-Carias*.  As discussed in my dissent in *Garcia-Carias*, I find the majority's view untenable and therefore respectfully dissent.

---

[1] We heard *Garcia-Carias* and this case as companion cases.  In *Garcia-Carias*, a majority of this panel held that the departure bar to motions to reopen is invalid under *Chevron* in light of 8 U.S.C. § 1229a(c)(7)(A).